2008-NMCA-097

189 P.3d 679

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Donald BULLCOMING, Defendant–
Appellant.**

**No. 26,413.**

Court of Appeals of New Mexico.

June 4, 2008.

Certiorari Granted, No. 31,186,
July 21, 2008.

548

Gary K. King, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

WECHSLER, Judge.

{1} As per the Corrected Judgment, Sentence, Order Partially Suspending Sentence and Commitment to the Department of Corrections, Defendant Donald Bullcoming was convicted of the offense of Aggravated Driving While Under the Influence of Intoxicating Liquor and sentenced based on four prior DWI convictions. He appeals, raising five issues: (1) that the district court erred in denying a motion for mistrial based on the prosecutor's improper comment on silence in closing argument, (2) that the district court abused its discretion by allowing testimony by a police officer about the cause of an accident involving Defendant when the officer did not witness the accident, (3) that the district court erred in admitting into evidence blood draw results when the analyst who prepared the results was not available to testify, (4) that the district court erred in admitting into evidence the hearsay statement of Defendant's brother, and (5) that the State did not sufficiently prove Defendant's four prior DWI convictions. We affirm Defendant's conviction. In doing so, we agree with the district court's use of the preponderance of the evidence standard in addressing Defendant's prior DWI convictions.

## BACKGROUND

{2} Defendant was arrested after an automobile accident in which Defendant, while driving his sibling's vehicle, ran into another truck at an intersection. After the accident, the other driver got out of his truck and went back to the vehicle that Defendant was driving and asked for Defendant's license and registration. The other driver noticed the smell of alcohol coming from Defendant's vehicle. When the other driver returned to his truck, he asked his wife to call the police. As the other driver examined the rear end of his truck for damage, Defendant and his sister approached him. The other driver spoke with both of them and obtained insurance information. The other driver smelled alcohol emanating from Defendant and also observed that Defendant had bloodshot eyes. When the other driver told Defendant that he needed to get a police report and had called the police, Defendant excused himself, saying that he needed to go to the restroom, and went across the street toward a medical complex. The other driver testified that the police brought Defendant back to the scene of the accident approximately ten minutes later.

{3} Defendant testified that he had not been drinking for about ten hours that day. He said that he was driving because the others in the vehicle had been drinking and were drunk. According to Defendant, the

odor of alcohol in the vehicle came from them, rather than him. Defendant further testified that he left the scene after the other driver told him that the police had been called because he was afraid that he was going to be arrested. Defendant knew he had an outstanding warrant because he had violated his probation in Oklahoma by leaving that state. He walked to a creek where he met other men who were drinking vodka, and he testified that he drank with them for about thirty minutes and that they drank about a pint and a half gallon. He was picked up by the police when he returned to the road. He was intoxicated when he was given field sobriety tests back at the scene of the accident.

## COMMENT ON SILENCE

{4} In closing argument, on rebuttal, the prosecutor argued that Defendant did not tell the police officers anything about drinking vodka with others. He argued that if Defendant had told the officers that he "was just back in the bushes with three or four guys and I drank a whole load of vodka," and "I'll show you," one of the officers could have gone to the bushes and investigated and asked the others if Defendant had been drinking. Defendant objected on Fifth Amendment grounds. The district court then stated: "Ladies and gentlemen of the jury, ... Defendant has a right to remain silent and be presumed innocent. And, you are not to infer from counsel's argument that ... Defendant had any duty to say anything." After the district court excused the jury, Defendant moved for a mistrial, contending that the prosecutor's argument was "so prejudicial and so in violation of the law, of the constitution," that it justified a mistrial. The district court denied the motion, stating that the comment was only a casual comment that was cured by its instruction to the jury.

█ {5} On appeal, Defendant argues that the comment was not casual; rather, Defendant asserts that its calculation was demonstrated by the prosecutor's questioning of Officer Martin Snowbarger about his conversation with Defendant. When, as here, the facts are not in question, the issue of whether the prosecutor made an improper comment

on the defendant's silence is a question of law that we review de novo. *State v. Foster,* 1998–NMCA–163, ¶ 8, 126 N.M. 177, 967 P.2d 852. We may affirm the district court if it was correct for any reason, as long as the basis for such ruling was raised before the district court. *State v. Granville,* 2006–NMCA–098, ¶ 12, 140 N.M. 345, 142 P.3d 933.

{6} We now review the record, which demonstrates that the prosecutor's comment related to Defendant's pre-arrest, as opposed to his post-arrest, silence. Officer Snowbarger first encountered Defendant on the other side of a bridge away from the scene of the accident and spoke with him at that time. He requested another police car to transport Defendant back to the accident scene. He arrived back at the scene at the same time as Defendant and was there during the time that Officer David Rock administered field sobriety tests to Defendant. Officer Snowbarger testified that he issued Defendant three citations but that he did not issue a citation for DWI. Officer Rock testified that when he arrived at the scene, Defendant was still in a police car. Officer Rock removed Defendant from the car, observed him walk to the sidewalk, and asked him, "Have you had anything to drink today?" Defendant responded that he "had one this morning at 6:00 a.m." Officer Rock wrote Defendant's response in his report. Officer Rock then administered the field sobriety tests. After completing the tests, Officer Rock concluded that Defendant was intoxicated and impaired, arrested him, and took him to the police station for booking. Although Officer Rock's testimony is not clear as to the exact location where he read Defendant his rights under the New Mexico Implied Consent Act, he testified that he did so after arresting Defendant. Ultimately, he obtained a warrant and took Defendant to the emergency room for a blood alcohol test.

█ {7} The prosecution may use a defendant's pre-arrest silence for impeachment purposes without infringing upon his or her Fifth Amendment rights. *See State v. Gonzales,* 113 N.M. 221, 229, 824 P.2d 1023, 1031 (1992); *Foster,* 1998–NMCA–163, ¶¶ 13–14. Although the transcript does not reflect ex-

**550**

actly when Defendant was given his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), we assume that it was not until after Officer Rock arrested him.

∎ {8} With this factual predicate, we conclude that the context of the prosecutor's statement in rebuttal shows that he was only referencing Defendant's pre-arrest silence. First, the prosecutor discussed the police officers' ability to investigate by going to the bushes and asking anyone found there if Defendant had been drinking. That time period was, by necessity, limited, because anyone present in the bushes had the ability to leave that area. Second, although a police investigation may certainly continue after an arrest, the prosecutor's discussion was limited to the police officers' investigation in the context of this case, which impliedly referenced only the investigation at the scene when the officers had the present ability to return to the bushes while someone with knowledge of Defendant was still present. Third, the prosecutor made reference to Defendant's statement to Officer Rock that he had not had anything to drink since 6:00 a.m. That statement was a pre-arrest statement.

{9} Thus, from the factual context, as well as the wording of the prosecutor's argument, we conclude that it reasonably related only to Defendant's pre-arrest silence. It did not merit a granting of Defendant's motion for a mistrial.

## OFFICER SNOWBARGER'S TESTIMONY ABOUT THE CAUSE OF THE ACCIDENT

∎ {10} Defendant contends that Officer Snowbarger was not qualified to offer opinion testimony concerning the cause of the accident because he was not qualified as an expert and, testifying as a lay witness, he could not testify about causation because he did not witness the accident. Officer Snowbarger testified at trial as the State's witness. He was dispatched to and observed the accident scene. After being informed that Defendant had left the scene, he also left the scene, located Defendant, and requested the transport of Defendant back to the scene by another officer. Defense counsel objected when the prosecutor asked Officer Snowbar-

ger if he was able to form an opinion about the cause of the accident. Upon the district court's inquiry as to a ground for the objection, defense counsel stated, "There's no foundation for it. He's not an expert." The prosecutor offered to lay a foundation, and Officer Snowbarger testified that he was assigned to the traffic division and had the primary duty of investigating traffic accidents. He testified that he had received training in basic accident reconstruction and traffic crash reconstruction and was certified as a traffic crash reconstructionist. Officer Snowbarger also testified that he had formed opinions as to the contributing factors to Defendant's accident, and when asked to state his opinions, defense counsel again objected, stating, "I would still object, Your Honor." The district court overruled the objection. Accordingly, Officer Snowbarger testified to his opinion as to the contributing factors of Defendant's accident, stating that "the driver of the vehicle was not paying attention to the vehicle in front of him, or his driving habits." When asked if he was able to formulate an opinion based on his observations as to why the driver was not paying attention, again over objection, Officer Snowbarger testified that he believed that the driver "was under the influence of some kind of intoxicating liquor."

∎ {11} We do not agree with Defendant's contention that Officer Snowbarger was not qualified as an expert to provide his opinion about the cause of the accident. Under Rule 11–702 NMRA, a witness may testify as to an expert opinion if the "specialized knowledge" of the witness "will assist the trier of fact" and the witness is qualified as an expert to provide the opinion by virtue of "knowledge, skill, experience, training or education." The district court, in its discretion, decides whether a witness qualifies as an expert under Rule 11–702. *State v. Downey,* 2007–NMCA–046, ¶ 11, 141 N.M. 455, 157 P.3d 20, *cert. granted,* 2007–NMCERT–004, 141 N.M. 569, 158 P.3d 459. When defense counsel raised the issue of Officer Snowbarger's qualifications by objecting for lack of foundation, the prosecutor elicited his qualifications. Officer Snowbarger testified about his training and his certification as a traffic

crash reconstructionist. Defense counsel then only restated her earlier objection of lack of foundation. She did not seek to engage Officer Snowbarger in a voir dire examination or otherwise challenge his qualifications. The district court acted within its discretion in allowing Officer Snowbarger's causation testimony based on the foundation laid concerning his qualifications.

{12} Nor did the district court abuse its discretion because the prosecutor did not formally proffer Officer Snowbarger as an expert witness. The prosecutor clearly presented the issue to the district court. He asked Officer Snowbarger about whether he had formed any opinions about the cause of the accident. After laying a foundation for testimony about his opinion, the prosecutor asked Officer Snowbarger to state his opinions. There was no lack of clarity concerning the scope of the question calling for Officer Snowbarger's expertise or of the relationship of his qualifications to his ability to present an opinion in response to the question. Defendant does not indicate how a formal proffer would have served any meaningful purpose or how he was prejudiced by the absence of a formal proffer. *See State v. Garcia,* 76 N.M. 171, 176, 413 P.2d 210, 213–14 (1966) (explaining that the district court has substantial discretion, based on its perception of the offered expert's qualifications, in deciding whether to allow or deny the testimony of such a witness); *see also State v. Gregoroff,* 287 Mont. 1, 951 P.2d 578, 580–81 (1997) (concluding that the district court did not abuse its discretion in admitting the expert testimony of a law enforcement officer even though she was never "formally offer[ed]" as an expert witness by the prosecution).

**BLOOD DRAW RESULTS**

{13} The State introduced evidence of the analysis of the blood sample taken from Defendant through the testimony of an analyst of the New Mexico Department of Health Scientific Laboratory Division, Toxicology Bureau. The witness was not the analyst who performed the analysis of the blood sample and did not prepare the blood analysis report admitted into evidence. De-

fendant objected to the analyst's testimony on the basis that it violated Defendant's right of confrontation. Defendant further objected to the receipt of the blood analysis report as a business record because it was prepared in anticipation of litigation. The district court allowed the report to be admitted into evidence as a business record.

{14} On appeal, Defendant argues that the district court erred in allowing the blood draw results. Relying on *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), he contends that testimonial statements may not be introduced against a defendant at trial unless both the declarant is unavailable and the defendant has had the opportunity to cross-examine the declarant. According to Defendant, the State did not prove that the analyst who prepared the report was unavailable to testify at trial, and Defendant did not have the opportunity to cross-examine that analyst. Defendant further acknowledges that our Supreme Court has decided this issue in *State v. Dedman,* 2004–NMSC–037, 136 N.M. 561, 102 P.3d 628, but argues that decisions in other states following *Crawford* have reached a different result than our Supreme Court in *Dedman.* We note that although Defendant argued in the district court that the witness's testimony should have been excluded because of late disclosure, Defendant does not raise that ground as a basis for reversal on appeal.

{15} We begin and end our legal analysis with *Dedman* because it is dispositive. In *Dedman,* the nurse who had withdrawn blood from the defendant for testing by the Scientific Laboratory Division (SLD) was not available to testify at trial. *Dedman,* 2004–NMSC–037, ¶¶ 3–4. The SLD toxicologist testified at trial that the blood alcohol report was the product of the "regularly conducted business activity" of SLD. *Id.* ¶ 43. Our Supreme Court held that there was no indication the report was untrustworthy or unreliable and further held that the report was admissible under the public records exception to the hearsay rule. *Id.* ¶¶ 24, 44. It stated that "ordinarily a blood alcohol report is admissible as a public record and presents no issue under the Confrontation Clause because the report is non-testimonial and satis-

fies" the test of *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), *abrogated by Crawford*, 541 U.S. 36, 124 S.Ct. 1354, concerning the admission of hearsay evidence under the Confrontation Clause. *Dedman*, 2004–NMSC–037, ¶ 45.

{16} In this case, the SLD toxicologist testified that the report was used and kept in the ordinary course of SLD's business and also testified about the procedure used in preparing the report. As in *Dedman*, there was no evidence that there was any deviation from ordinary practice or that the report was untrustworthy or unreliable. *See id.* ¶ 44. We are bound by *Dedman*, a decision of our Supreme Court, and we therefore do not address the opinions of other states on the issue. *See State v. Manzanares*, 100 N.M. 621, 622, 674 P.2d 511, 512 (1983) (explaining that this Court is bound by the precedents of our Supreme Court "even when a United States Supreme Court decision seems contra").

{17} We do not agree with Defendant's argument at oral argument that *State v. Almanza*, 2007–NMCA–073, 141 N.M. 751, 160 P.3d 932, is inconsistent with *Dedman*. In *Almanza*, because of short notice to subpoena the chemist to appear at trial, the prosecution introduced the telephonic testimony of a New Mexico State Crime Lab chemist concerning the character of the substance the state alleged was illegal drugs. *Almanza*, 2007–NMCA–073, ¶¶ 1–3. This Court held that the testimony violated the defendant's confrontation rights. *Id.* ¶¶ 1, 12–13. However, *Almanza* did not involve the issue of the testimonial nature of a report admissible under *Roberts*. As discussed in *Dedman*, the blood alcohol report in the present case was non-testimonial and prepared routinely with guarantees of trustworthiness. *See Dedman*, 2004–NMSC–037, ¶ 44.

## HEARSAY STATEMENT OF DEFENDANT'S BROTHER

{18} Officer Snowbarger testified, over Defendant's objection, to statements that were told to him by Defendant's brother, who did not testify at trial. He testified that Defendant's brother told him that Defendant had been driving the vehicle and pointed in the direction that Defendant had gone from the scene. The district court responded to Defendant's hearsay objection by instructing the jury that the testimony was not for the truth of the statements; rather, it served to show that it caused Officer Snowbarger to take further action. Defendant did not make a Confrontation Clause objection.

{19} We review the admission of hearsay evidence under an abuse of discretion standard. *State v. Torres*, 1998–NMSC–052, ¶ 15, 126 N.M. 477, 971 P.2d 1267, *overruled on other grounds by State v. Alvarez-Lopez*, 2004–NMSC–030, ¶ 23, 136 N.M. 309, 98 P.3d 699. The district court did not abuse its discretion in allowing this testimony. First, it did not allow hearsay testimony because it instructed the jury not to accept the testimony for the truth of what Defendant's brother said. Rule 11–801(C) NMRA (defining hearsay as "a statement ... offered in evidence to prove the truth of the matter asserted"). Second, even if the testimony had been hearsay, there was no prejudice to Defendant. *See Clark v. State*, 112 N.M. 485, 487, 816 P.2d 1107, 1109 (1991) (noting that error in the admission of evidence in a criminal case must be prejudicial and not harmless and that standard is met "if there is a reasonable possibility that the evidence complained of might have contributed to the conviction"). There was no material issue that Defendant had been driving the vehicle or had left the scene in a particular direction.

{20} As to the Confrontation Clause, our review is de novo. *Torres*, 1998–NMSC–052, ¶ 20. In this case, we review for fundamental error because Defendant did not raise an objection in the district court. *See State v. Munoz*, 2006–NMSC–005, ¶ 12, 139 N.M. 106, 129 P.3d 142. Fundamental error exists in this context if Defendant's "innocence is indisputable or the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand." *State v. Hennessy*, 114 N.M. 283, 287, 837 P.2d 1366, 1370 (Ct.App.1992) (internal quotation marks and citation omitted). No such circumstances exist in this case because, as we have stated, there was no material issue as to whether Defendant was driving or

whether he left the scene in a particular direction after the accident.

## PROOF OF PRIOR DWI CONVICTIONS

{21} Sentencing for a DWI conviction in New Mexico is graduated depending on a defendant's prior convictions, if any. *See* NMSA 1978, § 66–8–102(E) to (J) (2005) (amended 2007). The district court found that Defendant had at least four prior convictions of DWI and sentenced him on the basis that his conviction in this case was his fifth DWI conviction. As a result, Defendant's conviction was for a fourth degree felony, subjecting him to a two-year term of imprisonment, which term was imposed by the district court. Section 66–8–102(H).

{22} In proving prior DWI convictions for purposes of enhancing a DWI conviction, the state has the "initial burden of presenting evidence of the validity of each" of a defendant's prior DWI convictions. *State v. Gaede,* 2000–NMCA–004, ¶ 8, 128 N.M. 559, 994 P.2d 1177. If the state presents a prima facie case, the defendant may present contrary evidence. *Id.* The state continues to have the ultimate burden of persuading the district court, as factfinder, of the validity of each of the convictions. *Id.*

{23} Defendant argues on appeal that the State's evidence was insufficient to prove that Defendant had four prior convictions. As part of his argument, he asserts that the State had to prove the convictions to a standard of beyond a reasonable doubt rather than the lesser standard, to a preponderance of the evidence, that was used by the district court.

{24} Based on documents that were before the district court, the district court found that Defendant had been convicted of DWI in Elk City Municipal Court, Andarko, Oklahoma, on December 30, 1993; in Clinton Municipal Court, Oklahoma, on April 17, 1995; in Blaine County Oklahoma, on September 28, 2003; and in Dewey County, Taloga, Oklahoma, on December 9, 2004. Defendant contested the use of the 1993 and 1995 convictions to the district court, but the district court found that the convictions were valid. On appeal, although Defendant notes the objections below, he does not argue that the district court erred except in its application of the standard of proof. We thus understand Defendant's argument to be that the validity of those convictions depends on the district court's proper application of the standard of proof.

{25} In making his standard of proof argument, Defendant acknowledges that the New Mexico Supreme Court, in *State v. Smith,* 2000–NMSC–005, 128 N.M. 588, 995 P.2d 1030, held that in proving prior convictions for habitual offender enhancement, the State need only meet the standard of preponderance of the evidence. Defendant further acknowledges this Court's statement in *State v. Sedillo,* 2001–NMCA–001, ¶ 5, 130 N.M. 98, 18 P.3d 1051, that proof beyond a reasonable doubt is not necessary to prove prior DWI convictions for sentencing in a DWI case. Defendant relies on cases of the United States Supreme Court starting with *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), holding that the proof of "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." According to Defendant, *Apprendi* was decided after *Smith,* and, in light of *Apprendi* and its United State Supreme Court progeny, *Sedillo* was wrongly decided.

{26} But, Defendant's argument disregards the express holding of *Apprendi.* In reaching its conclusion, the United States Supreme Court explicitly excluded "the fact of a prior conviction" from the type of facts that must be proved beyond a reasonable doubt. *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348. In doing so, the United States Supreme Court expressly confirmed its earlier position in *Jones v. United States,* 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (explaining that the U.S. Constitution does not require prior convictions that increase a maximum penalty to be proved beyond a reasonable doubt), that facts of prior convictions do not fit within the same category as other facts that increase "the penalty for a crime beyond the prescribed statutory maximum." *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348.

{27} A beyond a reasonable doubt standard does not apply to a finding of a prior DWI conviction for purposes of DWI sentencing. *See Sedillo,* 2001–NMCA–001, ¶¶ 5, 10. There is no indication in the record on appeal that there was insufficient evidence to support the district court's findings of Defendant's prior DWI convictions.

## CONCLUSION

{28} We affirm Defendant's conviction.

{29} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge, and CELIA FOY CASTILLO, Judge.