IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2019-NMCA-009

Filing Date: October 22, 2018

Docket No. A-1-CA-35424

STATE OF NEW MEXICO,

    Plaintiff-Appellant,

v.

EMILY A. RUFFIN,

    Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Jacqueline D. Flores, District Judge

Hector H. Balderas, Attorney General
Santa Fe, NM
Laurie Blevins, Assistant Attorney General
Albuquerque, NM

for Appellant

Dan Cron Law Firm, P.C.
Kitren Fischer
Dan Cron
Santa Fe, NM

for Appellee

OPINION

HANISEE, Judge.

{1}     The State appeals the district court's pretrial ruling prohibiting one of its witnesses from testifying as an expert. We affirm in part, reverse in part, and remand for further proceedings.

I.     BACKGROUND

{2}     At approximately 7:30 p.m. on October 18, 2013, Deputy Leonard Armijo responded to a report of a two-vehicle accident involving a Ford Bronco and Toyota 4Runner. Upon arriving at the scene, Deputy Armijo observed a Ford Bronco lying on its side with a deceased individual

1

inside. Defendant Emily A. Ruffin was standing in front of the Ford Bronco and told Deputy Armijo she was the driver of the Toyota 4Runner. She was in a hurry to pick up a friend from the airport when her phone rang and fell to the floor. When she looked at the floor, the Ford Bronco "swerved and cut in front of her, which had caused the crash." Deputy Armijo detected an odor of alcohol while talking with Defendant, prompting him to call a DWI unit to his location. Deputy Johan Jareño responded and after investigating Defendant for DWI, placed her under arrest. Defendant was charged, inter alia, with homicide by vehicle and driving while under the influence of intoxicating liquor or drugs.

{3}     A week before trial was scheduled, the State, for the first time, notified the district court and defense counsel that it intended to qualify Deputy Armijo as an expert witness in, as the State later clarified, "crash investigations." The district court neither ruled on the admissibility of Deputy Armijo's proposed expert testimony, nor accepted Deputy Armijo as an expert witness under Rule 11-702 NMRA (providing the requirements for a witness to be qualified and give an opinion as an expert).

{4}     Four days before trial was scheduled, Defendant filed a motion in limine, seeking to prohibit Deputy Armijo from testifying as an expert witness on the issue of causation and in regard to accident reconstruction, and to limit his testimony to only his personal observations during his investigation of the accident scene. During the hearing on Defendant's motion, held the day before trial was scheduled, Defendant also argued that Deputy Armijo's proposed expert testimony should also be excluded under Rule 11-403 NMRA because it bore "a legitimate risk of misleading the jury."

{5}     During the hearing, Deputy Armijo testified that for approximately eight years he had been assigned to the DWI Traffic Unit of the Bernalillo County Sheriff's Department. In conjunction with his assignment, he attended a 240-hour, three-phase training course in crash investigations and reconstruction. As part of the first phase of training—"at-scene crash investigations"—Deputy Armijo learned how to respond to crash investigations, assist at and protect the scene, and observe points of impact, "skid marks," "yaw marks," "other debris deposited on the asphalt," and vehicles at their "final rest." During the second phase of training—"advanced at-scene crash"—he learned "airborne equations, what vehicles would become airborne[,] . . . speed analysis, crash analysis, [and] what causes vehicles to change directions." Deputy Armijo testified that to conduct a speed analysis, "[y]ou have to ascertain what's called the coefficient of friction or what is commonly referred to as the drag factor of the roadway[,]" which is determined by using a mathematical equation. During the third and final phase of training—"crash reconstruction"—Deputy Armijo learned how to reconstruct a crash, which involves observing the scene, looking at the crash damage, looking at the position of the vehicles, and looking for "any road evidence to include skid marks, [and] vehicle debris[.]" He testified this "teaches you where to locate the area of impact, where the crash occurred, how it occurred, and how the vehicles sustained the damage that they've sustained."

{6}     Deputy Armijo explained that while a sergeant can override his recommendation as to whether a full accident reconstruction should be conducted, he only conducts such a reconstruction when there are no independent witnesses, he has no corroborating statements from the drivers, and/or the evidence does not match with what he observes at the scene of the

2

accident. Deputy Armijo testified that, without conducting a full reconstruction of a given accident, he is only able to form an opinion regarding:

> [H]ow the vehicles came together. What contacted. What is on each of the vehicles. There's specific damage to each of the vehicles that the vehicles will sustain during the contact of the vehicles. It's basically like a jigsaw puzzle. You can put those two vehicles together. As long as the damage matches up to what the evidence shows, reconstruction wouldn't be necessary.

Deputy Armijo testified that he had investigated over five thousand crashes—three hundred eighty-seven of which involved great bodily injury or fatality—and performed full accident reconstructions in only eleven cases. During ensuing court proceedings, he had been qualified as an expert in "crash investigations" on four prior occasions, and in "crash reconstruction" on six occasions.

{7}     In this case, Deputy Armijo decided not to conduct a full accident reconstruction "because what I was looking at, it was quite obvious, it was quite a simple crash." Deputy Armijo observed "specific damage" to the Ford Bronco's red tail light lens, as well as to the clear head light lens of Defendant's vehicle. He then "walked" the scene of the accident and located pieces of the vehicles' red and clear lenses deposited on the road approximately seven or eight hundred feet from the vehicles' resting points, which helped him locate the apparent point of impact. Although he did not see any "braking marks on either vehicle[,]" Deputy Armijo observed yaw marks, which he stated are consistent with a vehicle sliding sideways, and gouge marks, which he explained indicate a vehicle's roof and/or metal making contact with the road.

{8}     While discussing the Ford Bronco, Deputy Armijo stated it was "fairly obvious" that it had rolled over. When asked what starts a rollover, Deputy Armijo stated:

> The stability of that vehicle has been compromised by another vehicle coming into contact with it. Once that vehicle has gone into the yaw marks sliding sideways, it's inevitable that vehicle is going to roll over due to the fact that the make and model of that vehicle, the speeds, and once the rims come in contact with the pavement[,] . . . [i]t's going to roll.

In addition to not undertaking a full accident reconstruction, Deputy Armijo did not use any mathematical formulae in conjunction with his observations and determinations regarding the accident scene, including those that would be necessary to ascertain vehicle speed.

{9}     On cross examination, defense counsel asked Deputy Armijo about Defendant's Exhibit A, Deputy Armijo's handwritten field notes concerning the accident. Deputy Armijo admitted that he did not write speed calculations, rollover sequence calculations, or any other type of calculations in his field notes. He also admitted that he "did not perform a timeline analysis of what occurred at various points in the crash," take crash measurements, analyze scratch patterns on the Ford Bronco to determine how many times it rolled, measure the "distance in the roll sequence," nor return to the scene of the accident during "daylight hours[.]" Deputy Armijo conceded he did not analyze data from the crash data recorder, and did not collect or take any

3

daytime photographs of the "roadway fragments." Finally, defense counsel presented Deputy Armijo with Exhibit B, the diagram of the accident created by another officer on the scene, Deputy Phil Gonzales. Deputy Armijo was unable to say whether Deputy Gonzales documented the "beginning and end of the roll sequence" or the location of the yaw marks.

{10}     Following testimony, the State explained it planned to present Deputy Armijo's expert opinion as to the cause of the crash and that, based on the yaw and gouge marks on the road and damage to the Ford Bronco, the Ford Bronco had rolled over. The district court first expressed its general skepticism with qualifying investigatory law enforcement officers as expert witnesses because they "sort of have a stake in the outcome." It then expressed its more specific concern that Deputy Armijo was unable to articulate a methodology "to render an opinion that would be reliable to the jury[,]" and that his opinion would therefore be "more confusing to the jury than helpful." Although the State argued that Deputy Armijo's testimony would not be based on scientific evidence, but rather his training, skill, and knowledge, the district court ruled that Deputy Armijo would not be qualified as an expert witness under Rule 11-702. While the district court recognized that Deputy Armijo "had extra training" and that the issue of causation was "key in this case," it nonetheless ruled that it was prohibiting Deputy Armijo from testifying as to "any conclusions" he reached regarding the cause of the accident. The district court ruled that Deputy Armijo could only testify about his personal observations.

{11}     The State appealed the district court's ruling to this Court under NMSA 1978, Section 39-3-3(B)(2) (1972), before a jury was impaneled, certifying "that this appeal is not taken for the purpose of delay, and the evidence is a substantial proof of a fact material to the proceeding." On appeal, the State elaborates that, if qualified as an expert, Deputy Armijo would have testified based on his training and experience, opined "that Defendant's rear-ending [of] the vehicle traveling in front of her caused the collision[,]" educated the jury about yaw and gouge marks, and testified that he could "match the damage up" from the two vehicles based on the specific damage sustained by both vehicles. Furthermore, Deputy Armijo would testify that, in rear-ending the Ford Bronco, Defendant's vehicle "caus[ed] it to swerve sideways, then roll an unknown number of times, a theory buttressed by the physical damage to the [Ford] Bronco's roof support pillars and roof."

## II.     DISCUSSION

{12}     Appealing the district court's ruling, the State argues that (1) its appeal is permitted under Section 39-3-3(B)(2); (2) the district court erred in prohibiting Deputy Armijo from testifying as to any of the conclusions he reached as a result of his investigation, including those that could be deemed "lay opinions"; (3) the district court erred in prohibiting Deputy Armijo from testifying as an expert under Rule 11-702; and (4) the district court erred in excluding Deputy Armijo's expert testimony under Rule 11-403. We address each argument in turn.

## A.     The State's Appeal Under Section 39-3-3(B)(2) Is Proper

{13}     Before considering the merits of the State's appeal, we must first resolve whether the State had a right, prior to trial, to appeal the district court's ruling precluding Deputy Armijo from testifying as an expert witness under Rules 11-702 and 11-403. Under Section 39-3-

3(B)(2), the state may appeal a district court's order excluding evidence if it "certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." Defendant does not challenge the State's appeal on the basis of timeliness, *see State v. Mendez*, 2009-NMCA-060, ¶ 11, 146 N.M. 409, 211 P.3d 206 (concluding that an appeal under Section 39-3-3(B)(2) is timely when initiated before the jury is sworn), *rev'd on other grounds by* 2010-NMSC-044, 148 N.M. 761, 242 P.3d 328; rather, Defendant argues that the State's appeal is not proper because the district court's "ruling did not make it impossible for the State to prove an element of its case" under Section 39-3-3(B)(2).

{14}    Substantively, the State's appeal must concern a court's suppression or exclusion of evidence that "could constitute substantial proof of a material fact[.]" *Mendez*, 2010-NMSC-044, ¶ 14. Defendant relies on this Court's holding in *State v. Romero*, 2000-NMCA-029, 128 N.M. 806, 999 P.2d 1038, which held that the State's appeal was proper under Section 39-3-3(B)(2) because the district court's ruling "controlled the course of the presentation of material evidence in the case, given the [s]tate's theory." *Romero*, 2000-NMCA-029, ¶ 8. We explained that "[t]he excluded evidence went to the very heart of the proof required to establish an essential element of the [s]tate's case . . . [and t]he court's ruling made it impossible for the [s]tate to prove an element of its case." *Id.* ¶ 9. However, we later clarified the substantive standard: "[W]e do not read *Romero* as allowing the state to appeal only when the district court's ruling makes it impossible for the state to prove its case. Rather, we interpret *Romero* as requiring that the excluded evidence be *important or significant*, as opposed to evidence of minor consequence." *Mendez*, 2009-NMCA-060, ¶ 12 (emphasis added). We discuss whether the State's appeal is proper under the substantive standard as clarified by this Court in *Mendez*.

{15}    When causation is contested in a vehicular homicide case, the state must prove beyond a reasonable doubt that the defendant's unlawful actions caused the death "in a natural and continuous chain of events[.]" *State v. Simpson*, 1993-NMSC-073, ¶ 13, 116 N.M. 768, 867 P.2d 1150 (internal quotation marks and citation omitted); *see* UJI 14-251 NMRA (explaining that when causation is in issue, the state must prove beyond a reasonable doubt that the defendant's act, "in a natural and continuous chain of events, uninterrupted by an outside event, resulted in the death and without which the death would not have occurred"). To prove causation, the State may, but is not required to, call an expert witness. *See State v. Platero*, 2017-NMCA-083, ¶ 18, 406 P.3d 557 (concluding that an expert was not required to prove cause of death in a vehicular homicide case); *cf. State v. Jimenez*, 2017-NMCA-039, ¶ 79, 392 P.3d 668 (noting that the state's decision "to call or not call a witness is a matter of trial tactics and strategy within the control of counsel" (internal quotation marks and citation omitted)). Defendant directly contests the State's theory that she caused the accident because she was intoxicated, asserting instead that the accident resulted from her momentary inattention when the Ford Bronco moved into her lane. Although Deputy Armijo could offer no opinion regarding whether or not Defendant was intoxicated, the State nonetheless sought to qualify him as an expert who would testify as to the cause of the accident from the standpoint of the sequence of events in which it occurred—a point of apparent dispute which bears upon the element of causation, which the district court identified as "key in this case." Even Defendant acknowledges that the district court's ruling prohibited Deputy Armijo from testifying that Defendant caused the accident itself. Under these circumstances, and without the benefit of a developed record regarding the precise nature of the

5

dispute regarding the collision and its aftermath, we have no basis to conclude that the circumstances of an accident are not "important or significant" to a jury's determination regarding the element of causation. *See Mendez*, 2009-NMCA-060, ¶ 12. As such, the district court's ruling adversely impacted the State's capacity to present evidence that went to the "heart of the proof required to establish the element" of causation. *Id.* (internal quotation marks and citation omitted); *cf. State v. Gonzales*, 2012-NMCA-034, ¶ 5, 274 P.3d 151 (noting that an expert opinion is evidence). We conclude in this circumstance that, under Section 39-3-3(B)(2), the State may, pretrial, appeal from the deprivation of its capacity to prove the element of causation by means of an expert witness. We therefore proceed to the merits of the State's appeal.

**B.      Deputy Armijo's "Lay Conclusions"**

{16}      The State first argues that by prohibiting Deputy Armijo from testifying as to "any conclusions" he reached regarding the circumstances of the accident, the district court impermissibly prohibited him from offering certain conclusions that even a layperson would be permitted to offer at trial. As an example, the State cites *State v. Wildgrube*, 2003-NMCA-108, 134 N.M. 262, 75 P.3d 862, where this Court held that a law enforcement officer who had observed the scene of the accident was permitted to testify as a lay witness under Rule 11-701 NMRA about the location of the debris and to offer an opinion about the point of impact through a diagram. *Wildgrube*, 2003-NMCA-108, ¶ 15. *Wildgrube* involved the officer inputting measurements he had taken at the scene of the accident into a computer program which then produced a diagram of the scene. *Id.* ¶ 12. The officer then testified, without objection, as to the evidence he collected, the methods he used to gather the evidence, the methods he used to measure the location of debris found at the scene, the methods he used to create the computer-generated diagram, and his opinions about the diagram's accuracy and "the meaning of the debris path." *Id.* ¶¶ 12-13.

{17}      In this case, however, the State planned to offer Deputy Armijo's testimony to not only his personal observations, but also to explain his conclusions regarding what those observations mean and opine as to the cause of the accident in light of his specialized training and experience. And, unlike in *Wildgrube*, Defendant objected to the proposed testimony. The State argued to the district court that Deputy Armijo's opinion in this case and general understanding of traffic investigations, yaw marks, speed calculations, and crash data analysis were a product of his specialized training and experience not possessed by a regular police officer. Despite its similarity to the accident scene evaluation undertaken in *Wildgrube*, we conclude that the testimony excluded by the district court was, in this circumstance, expert testimony. *See State v. Winters*, 2015-NMCA-050, ¶ 11, 349 P.3d 524 (noting that "opinion testimony of lay witnesses is generally confined to matters which are within the common knowledge and experience of an average person" (internal quotation marks and citation omitted)); *cf. State v. Vargas*, 2016-NMCA-038, ¶¶ 22-23, 368 P.3d 1232 (concluding that an officer's testimony about the technical properties of stun guns and identifying stun gun injuries was based on his law enforcement training and experience, and was therefore expert testimony). We accordingly hold that the delineation of lay versus expert testimony in this instance is not controlled by *Wildgrube* and we have no basis on the limited record before us to reverse the district court's conclusion that Deputy Armijo's proposed testimony was not lay opinion testimony.

6

## C.    Deputy Armijo's Expert Testimony

{18}    Having concluded that the district court excluded conclusions reached by Deputy Armijo that constitute expert testimony, we next address whether it erred in doing so. Our analysis begins with Rule 11-702, which provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." A witness may be admitted as an expert under Rule 11-702 upon the satisfaction of three requirements: (1) "that the expert be qualified"; (2) that the testimony "will assist the trier of fact"; and (3) that the expert's testimony concern "scientific, technical or other specialized knowledge." *State v. Alberico*, 1993-NMSC-047, ¶¶ 43-45, 116 N.M. 156, 861 P.2d 192 (internal quotation marks omitted). "[T]he admission of expert testimony . . . is peculiarly within the sound discretion of the [district] court and will not be reversed absent a showing of abuse of that discretion." *Id.* ¶ 58. Although Defendant argues that the district court's exclusion of Deputy Armijo's expert testimony was proper because Deputy Armijo was not sufficiently qualified, the district court did not exclude his expert testimony on that ground. Rather, the district court ruled that the proposed expert testimony lacked a reliable methodology, a ruling that implicates the scientific knowledge element of the third requirement for the admission of expert testimony. *See Andrews v. U.S. Steel Corp.*, 2011-NMCA-032, ¶¶ 12-13, 149 N.M. 461, 250 P.3d 887 (holding that, under *Alberico*, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), "the proponent of [scientific expert] testimony must establish the reliability of the science and methodology on which it is based" to satisfy the third requirement for expert testimony). We therefore limit our discussion of the district court's ruling to its stated basis for exclusion under Rule 11-702. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked.").

{19}    "Where expert testimony concerns scientific knowledge, the proponent of the testimony must establish the reliability of the science and methodology on which it is based." *Andrews*, 2011-NMCA-032, ¶ 13. When determining the admissibility of expert testimony involving scientific knowledge, the district court should, pursuant to *Alberico* and *Daubert*, consider whether the testimony is "grounded in valid, objective science and [is] reliable enough to prove what it purports to prove" by testing the expert's methodology. *State v. Torrez*, 2009-NMSC-029, ¶ 21, 146 N.M. 331, 210 P.3d 228 (internal quotation marks and citation omitted). The *Alberico-Daubert* standard applies only to *scientific* expert testimony. *See State v. Torres*, 1999-NMSC-010, ¶ 43, 127 N.M. 20, 976 P.2d 20 (concluding that "the *Alberico*-[*D*]*aubert* standard applies only to expert testimony that relies on scientific knowledge," rather than all forms of expert testimony); *see also Quintana v. Acosta*, 2014-NMCA-015, ¶ 14, 316 P.3d 912 (noting that the *Alberico-Daubert* standard applies "only when the district court is evaluating the admissibility of scientific testimony"). "[T]he initial determination of whether to apply the *Alberico-Daubert* standard entails a conclusion of law that is subject to de novo review." *Torres*, 1999-NMSC-010, ¶ 28.

{20}    Thus, we first answer whether Deputy Armijo's expert testimony was based on "scientific" knowledge, thereby requiring application of the heightened *Alberico-Daubert*

7

standard. "Evidence is based on scientific knowledge if it is not self-explanatory, or if it is based on a scientific or medical principle." *State v. Aleman*, 2008-NMCA-137, ¶ 6, 145 N.M. 79, 194 P.3d 110 (internal quotation marks and citation omitted); *see State v. Bregar*, 2017-NMCA-028, ¶¶ 32-33, 390 P.3d 212 (noting that expert testimony involving the use of physics equations is based on scientific knowledge); *cf. State v. Brown*, 687 P.2d 751, 754 (Or. 1984) (en banc) ("The term 'scientific' . . . refers to evidence that draws its convincing force from some principle of science, mathematics and the like."). We understand Deputy Armijo's proposed expert testimony to fall within two distinct categories: non-scientific and scientific expert testimony.

### 1. Deputy Armijo's Non-Scientific Expert Testimony

**{21}**   To better frame the narrow scope of Deputy Armijo's *scientific* expert testimony, we begin by identifying Deputy Armijo's *non-scientific* expert testimony. As Deputy Armijo testified at the *Alberico* hearing, he was able to match "specific damage" to the Ford Bronco's red tail light lens and the Toyota 4Runner's clear front lens, which led him to conclude that the front of the Toyota 4Runner made contact with the rear of the Ford Bronco. He also located the Ford Bronco's red lens and the Toyota 4Runner's clear lens approximately seven or eight hundred feet from the vehicles, allowing him to conclude that the Toyota 4Runner and the Ford Bronco collided where the lenses were discovered. He planned to inform the jury about the yaw and gouge marks he observed and the phenomena those marks generally indicate. Finally, based on the yaw and gouge marks found on the road and the physical damage to the Ford Bronco, Deputy Armijo concluded and the State proposed that he testify that the Ford Bronco rolled over. Deputy Armjio's non-scientific expert testimony is based on his personal observations of physical evidence found at the scene, is straightforward, and appears to fit directly within the scope of his specialized training. Moreover, none of these points of testimony arose from application of scientific principles or mathematic computations. We therefore conclude that this testimony was not based on "scientific knowledge" and the district court erred in applying the *Alberico-Daubert* standard to this testimony.

**{22}**   Having concluded that the district court applied the wrong legal standard, we also analyze whether the district court abused its discretion in denying the admission of Deputy Armijo's non-scientific expert testimony. A district court "abuses its discretion when it exercises its discretion based on a misunderstanding of the law." *State v. Lente*, 2005-NMCA-111, ¶ 3, 138 N.M. 312, 119 P.3d 737. Given the district court's application of the wrong legal standard to Deputy Armijo's non-scientific expert testimony, we conclude it abused its discretion in this respect.

**{23}**   Our holding in this regard should not, however, be construed to command that the district court determine Deputy Armijo's non-scientific expert testimony to be either reliable or unreliable. *See Torrez*, 2009-NMSC-029, ¶ 21 (holding that "even with non-scientific expert testimony, the [district] court must exercise its gate-keeping function and ensure that the expert's testimony is reliable"). When ruling on the admissibility of non-scientific expert testimony, the district court "must evaluate a non-scientific expert's personal knowledge and experience to determine whether the expert's conclusions on a given subject may be trusted." *Id.* The district court tests "whether an expert's skills, experience, training, or education qualify him or her in the relevant subject . . . [and] uses these same factors . . . to test the validity of the expert's conclusions . . . [and determine whether they] prove what they purport to prove." *Id.* ¶ 22.

8

Whereas the district court misapplied the *Alberico-Daubert* standard to test the reliability of Deputy Armijo's methodology in the first instance, on remand it should instead test the validity of Deputy Armijo's non-scientific expert testimony by evaluating whether his conclusions are consistent with his specialized training and experience. If answered affirmatively, Deputy Armijo's non-scientific testimony would be admissible under Rule 11-702.

## 2. Deputy Armijo's Scientific Expert Testimony

{24}   We next discuss what we conclude to be Deputy Armijo's scientific expert testimony regarding the cause of the apparent rollover. As this Court noted in *Bregar*, expert testimony is scientific when it applies physics principles. 2017-NMCA-028, ¶¶ 32-33. Defendant contends that Deputy Armijo planned to "testif[y] to scientific matters involving math and physics." We agree. Whereas his expert opinion that a rollover occurred is based on his non-scientific knowledge, his expert opinion regarding the *cause* of the apparent rollover—in other words, *why* it happened vis-à-vis the colliding of the two impacted vehicles—necessarily requires that he analyze the chain of events leading up to, and culminating in the Ford Bronco rolling over. But by Deputy Armijo's own admission, determining how a rollover starts requires analyzing, amongst other things, the vehicles' speeds. Deputy Armijo testified that analyzing speed requires the use of a mathematical equation to "ascertain what's called the coefficient of friction or what is commonly referred to as the drag factor of the roadway." Accordingly, pursuant to Deputy Armijo's own description of the methodology needed to identify the cause of a collision that results in a vehicle rollover, any expert testimony concerning the cause of this apparent rollover would require application of mathematical principles and would therefore be scientific expert testimony.

{25}   The State, however, argues that no scientific expertise was required for this testimony. To support its argument, the State cites *Duran v. Lovato* in which this Court held that the district court did not abuse its discretion in admitting an officer's expert testimony about the "area of impact" in an accident involving a pedestrian and vehicle, and whether speed was a factor in the accident. 1982-NMCA-182, ¶¶ 18-19, 99 N.M. 242, 656 P.2d 905 (internal quotation marks omitted). However, *Duran* was decided prior to both *Daubert* and *Alberico* and provides no guidance to this Court about distinguishing between scientific and non-scientific expert testimony. Furthermore, to the extent that *Duran* remains good law after *Daubert* and *Alberico*, it is factually distinguishable from the present case. In *Duran*, the officer took measurements at the scene of the accident which he later used to create a diagram of the accident scene and relied partly on his diagram to render his expert opinion. 1982-NMCA-182, ¶ 18. Deputy Armijo did no such thing. We therefore decline to extend *Duran*'s rationale to the present case.

{26}   The State also argues that Deputy Armijo's testimony was not subject to the *Alberico-Daubert* standard because it was based on his specialized knowledge, citing *State v. Bullcoming*, 2010-NMSC-007, 147 N.M. 487, 226 P.3d 1 (*Bullcoming II*), *rev'd on other grounds sub nom. by Bullcoming v. New Mexico*, 564 U.S. 647 (2011) (*Bullcoming III*), and *State v. Bullcoming*, 2008-NMCA-097, 144 N.M. 546, 189 P.3d 679 (*Bullcoming I*). In *Bullcoming I*, this Court first held that an officer who made contact with a defendant after an accident could testify based on his specialized knowledge that the defendant caused an accident because he "was under the influence of some kind of intoxicating liquor." 2008-NMCA-097, ¶¶ 10-11 (internal quotation

marks omitted); *see Bullcoming II*, 2010-NMSC-007, ¶ 27 (noting that the record indicated that the officer based his opinion on his contact with the defendant). Our Supreme Court later held that the district court did not abuse its discretion in permitting the officer's testimony because he was well-qualified and "[d]efense counsel did not conduct voir dire examination or otherwise challenge his qualifications." *Bullcoming II*, 2010-NMSC-007, ¶ 29. However, both cases are factually distinguishable from this case. In *Bullcoming II*, the officer reached his conclusion based on his observations that the defendant exhibited signs of intoxication and had an odor of alcohol. *Id.* ¶¶ 4, 27. Here, considered in sum, Deputy Armijo's testimony conceded that he needed to apply physics principles to discover the cause of rollovers.

**{27}** Lastly, the State argues that no mathematical modeling was required for Deputy Armijo's expert opinion regarding the cause of the apparent rollover, citing *Lopez-Juarez v. Kelly*, 348 S.W.3d 10 (Tex. Ct. App. 2011). In *Lopez-Juarez*, the Texas Court of Appeals held that, "[i]n simple accidents, the accident reconstruction can be conducted without mathematical modeling." *Id.* at 21. However, the court noted that it was presented with a multiple vehicle accident, differing witness accounts of the accident, and the need to use complex physics calculations to determine fault. *Id.* at 19 n.13. It therefore concluded that the accident was "complex" which required mathematical modeling. *Id.* at 22. Although the case before this Court lacked the multivehicle complexity identified by *Lopez-Juarez* as a basis for requiring a scientific level of expertise, the collision lends itself to two differing interpretations: (1) Defendant's contention that the accident was caused by a combination of her inattention and the Ford Bronco traveling from its own lane into hers; and (2) Deputy Armijo's proposed conclusion that based on the tail and head light lenses deposited on the road, the yaw and gouge marks discovered on the road, and the damage to the Ford Bronco, Defendant rear-ended the Ford Bronco, causing the rollover and the driver's death. As stated above, the methodology described by Deputy Armijo indicated his need to apply physics principles and mathematical calculations to determine whether his suspected conclusion regarding the rollover was supported by scientific methodology. In other words, Deputy Armijo's specialized knowledge is no substitute for scientific methodology when expert testimony is of a scientific nature or depends upon the application of scientific principles. *Cf. Aleman*, 2008-NMCA-137, ¶ 6 (requiring application of the heightened *Alberico-Daubert* standard to evidence based on scientific knowledge, i.e., knowledge that is not self-explanatory or is based on scientific or medical principles).

**{28}** For the aforementioned reasons, we conclude that application of *Duran*, *Bullcoming*, and *Lopez-Juarez* is inapposite here, and that Deputy Armijo's expert testimony regarding the cause of the apparent rollover in this case is based on scientific knowledge and must be subjected to the heightened *Alberico-Daubert* standard. *See Daubert*, 509 U.S. at 590 (holding that "in order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method"). But here, Deputy Armijo elected not to conduct a full reconstruction, apply mathematical formulae, or engage in other procedures consistent with a final determination of what happened and why. Deputy Armijo neither testified to, nor documented, any discernible methodology from which the district court could test the reliability of his opinion. Reiterating that our Supreme Court has given the district court broad discretion in the exclusion of expert testimony, we conclude that the district court's exclusion of Deputy Armijo's proposed expert testimony regarding the cause of the rollover was not an abuse of its discretion in light of the facts of his investigation in this case. *See State v. Downey*, 2008-NMSC-061, ¶ 30, 145 N.M.

232, 195 P.3d 1244 (explaining that "for scientific evidence to be admissible under Rule 11-702, the reasoning or methodology underlying the testimony must not only be scientifically valid, it also must be *properly applied to the facts in [the] issue*" (alteration, omission, internal quotation marks, and citation omitted); *Alberico*, 1993-NMSC-047, ¶ 58 (holding that the exclusion of expert testimony is within the sound discretion of the district court and will not be disturbed unless "manifestly erroneous" (internal quotation marks and citation omitted)).

## D. Rule 11-403

{29}     Having concluded that Deputy Armijo's non-scientific expert testimony still has the potential on remand to pass muster under Rule 11-702, we also discuss the district court's ruling that it was nonetheless excludable under Rule 11-403. Even if expert testimony is admissible under Rule 11-702, it must be relevant under Rule 11-401 NMRA and even if relevant, may be excluded under Rule 11-403. *Alberico*, 1993-NMSC-047. ¶ 55. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and it is "of consequence in determining the action." Rule 11-401. Relevant evidence, although admissible under Rule 11-401, may still be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . [or] misleading the jury[.]" Rule 11-403. "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence that tends to suggest decision on an improper basis." *State v. Anderson*, 1994-NMSC-089, ¶ 63, 118 N.M. 284, 881 P.2d 29. The district court's exclusion of evidence under Rule 11-403 is reviewed for an abuse of discretion. *State v. Chamberlain*, 1991-NMSC-094, ¶ 9, 112 N.M. 723, 819 P.2d 673.

{30}     The probative value of Deputy Armijo's testimony is high because it bears directly upon whether Defendant rear-ended the Ford Bronco and caused the accident, which is a key issue in this case. Although the district court did not explicitly cite Rule 11-403 in its ruling, Defendant argued that the expert testimony would impermissibly mislead the jury under Rule 11-403 and the district court considered whether the evidence was relevant and weighed its probative value against two concerns. We therefore review its exclusion of Deputy Armijo's expert testimony under Rule 11-403. *See Progressive Cas. Ins. Co. v. Vigil*, 2018-NMSC-014, ¶ 12, 413 P.3d 850 (concluding that an appellate court may review a district court's exclusion of evidence under Rule 11-403 when the district court fails to cite the rule but the record reflects that the parties' arguments and the district court's ruling were guided by the rule's principles). First, the district court noted its skepticism about permitting investigating officers to testify as experts in their own cases as they "have a stake in the outcome." Second, the district court stated that it was concerned that Deputy Armijo's testimony would be confusing to the jury because his opinion lacked a scientific basis that would render it reliable.

{31}     As to the district court's first concern, any extent to which Deputy Armijo's involvement in this case had the potential to impact his testimony is a question of credibility for the jury. *See Alberico*, 1993-NMSC-047, ¶ 37 (explaining that it is "the most basic function of a jury to arbitrate the weight and credibility of evidence, even expert opinion testimony"); *Poore v. State*, 1980-NMSC-035, ¶ 5, 94 N.M. 172, 608 P.2d 148 (concluding that "the credibility of the witnesses was for the jury to determine"); *State v. Paiz*, 1999-NMCA-104, ¶ 30, 127 N.M. 776, 987 P.2d 1163 (noting that "the jury acts as the *sole* fact[-]finder based upon its weighing of the

evidence and credibility of the witnesses" (emphasis added)). Defendant, however, argues that several issues arise when the State calls an investigating officer to testify as an expert witness. *See United States v. Dukagjini*, 326 F.3d 45, 51 (2d Cir. 2003). The court in *Dukagjini* noted that when a case agent testifies as an expert, "the government confers upon him the aura of special reliability and trustworthiness surrounding expert testimony." *Id.* at 53 (internal quotation marks and citation omitted). Our Supreme Court has explicitly rejected this proposition. *See Alberico*, 1993-NMSC-047, ¶ 36 (concluding that the "premise that juries are awed by the aura of the infallibility of expert opinion testimony and thus defer to it is flawed speculation" (internal quotation marks omitted)).

{32}     The court in *Dukagjini* also noted that "there is an increased danger that the expert testimony will stray from applying reliable methodology and convey to the jury the witness's sweeping conclusions about [the defendants'] activities[.]" *Dukagjini*, 326 F.3d at 54 (internal quotation marks and citation omitted). However, the *Dukagjini* court explained, and we agree, that it is the responsibility of the district court to remain vigilant and ensure that the expert not stray from the scope of his/her expertise. *See id.* at 54-56 (noting that it is the role of district courts to remain "vigilant gatekeepers" to ensure that the expert witness not deviate "from the strictures of Rule[ 11-]403 and [Rule 11]702"); *see also Vargas*, 2016-NMCA-038, ¶¶ 13, 17 (noting that a witness may provide both lay and expert testimony in a single case, but "[w]hen the line between lay and expert opinion is blurred during the course of a single witness's testimony, it is the proper function of the district court, as gatekeeper, to correct the error when raised"). Here, there was no indication that Deputy Armijo was going to stray from any strictures set forth by the district court.

{33}     For these reasons, the danger of unfair prejudice or misleading the jury stemming from Deputy Armijo's involvement in this case is speculative and minimal, at best, particularly given the availability of limiting jury instructions. *See State v. King*, 2012-NMCA-119, ¶ 5, 291 P.3d 160 (explaining that "[a] district court abuses its discretion if its decision is obviously erroneous, arbitrary, or unwarranted, or clearly against the logic and effect of the facts and circumstances of the case" (internal quotation marks and citation omitted)); *see also* UJI 14-118 NMRA ("You should consider each expert opinion and the reasons stated for the opinion, giving them such weight as you think they deserve. You may reject an opinion entirely if you conclude that it is unsound.").

{34}     As to the district court's second concern, as we have concluded above, Deputy Armijo's non-scientific expert testimony did not require the district court to probe whether he used a reliable methodology. The district court did not consider this distinction. Rather, it found that the lack of a reliable methodology—the standard applied to expert testimony based on *scientific* knowledge—would confuse the jury. Having considered the distinction between expert testimony based on scientific versus non-scientific knowledge, we conclude that the danger of unfair prejudice or misleading the jury is slight compared to the evidence's probative value. A holding to the contrary would effectively permit the district court to circumvent our Supreme Court's explicit restriction of the *Alberico-Daubert* standard to expert testimony based on *scientific* knowledge—a result we cannot permit. *See Torres*, 1999-NMSC-010, ¶ 43 (concluding that the *Alberico-Daubert* standard applies only to "expert testimony that relies on scientific knowledge," rather than all forms of expert testimony); *see also Lente*, 2005-NMCA-111, ¶ 3

(noting that a district "court abuses its discretion when it exercises its discretion based on a misunderstanding of the law"). As there is no danger of unfair prejudice or misleading the jury that *substantially* outweighs the probative value of Deputy Armijo's expert testimony, we conclude that the district court abused its discretion in excluding this portion of Deputy Armijo's expert testimony under Rule 11-403.

## III.    CONCLUSION

{35}    We conclude that the State properly appealed to this Court, the district court did not err in excluding Deputy Armijo's scientific expert testimony, and the district court erred in excluding his non-scientific expert testimony. We therefore affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

{36}    **IT IS SO ORDERED.**


_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**


_____
**JULIE J. VARGAS, Judge**


_____
**EMIL J. KIEHNE, Judge**