1997-NMCA-064

943 P.2d 123

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Frank FELLHAUER, Defendant–Appellant.**

**No. 16773.**

Court of Appeals of New Mexico.

June 4, 1997.

Certiorari Denied July 24, 1997.

Tom Udall, Attorney General, M. Anne Wood, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

T. Glenn Ellington, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, for Defendant–Appellant.

## OPINION

BUSTAMANTE, Judge.

1. In this case of first impression in New Mexico, Defendant Frank Fellhauer (Defendant) appeals the trial court's refusal to grant him presentence confinement credit for time spent under "house arrest." Deciding that Defendant's house arrest should not be deemed official confinement under NMSA 1978, Section 31–20–12 (Repl.Pamp.1994), we affirm.

### FACTS AND PROCEEDINGS

2. Defendant was indicted on six counts of criminal sexual penetration in the first degree pursuant to NMSA 1978, Section 30–9–11(A) (Cum.Supp.1996) and three counts of criminal sexual contact of a minor in the third degree pursuant to NMSA 1978, Section 30–9–13(A) (Repl.Pamp.1994). Defendant was arrested on a bench warrant and incarcerated on May 20, 1992. Bail was initially set in the sum of $50,000, and Defendant was allowed to post either in cash or through a corporate surety. Apparently Defendant could not post the bond, and he remained in custody in the Bernalillo County Detention Center (BCDC) until August 5, 1992, when the district court entered an order releasing him to the custody of a relative. The order setting conditions of release imposed the following restrictions on Defendant:

1. Defendant will not leave Bernalillo County without Court permission; will keep his/her attorney informed of where-abouts and of any changes in work or home address.

2. Attorney has the duty and obligation to notify the Court that the defendant is not at normal address and has absconded.

3. House arrest.

4. No contact with children.

5. Pretrial services supervision.

6. Only leave home for medical treatment or attorney visit.

7. Random checking by PTS.

IF the defendant fails to appear as required, the Court may issue a warrant for his/her arrest. The Court may at any time modify or revoke the conditions of release imposed by this order. If the defendant willfully fails to appear as required, he/she may be charged with an additional felony charge.

The record below is not detailed, but it appears that at least one reason for Defendant's release from actual incarceration in the BCDC was so that he could receive medical treatment at the Veteran's Administration Hospital.

3. On October 30, 1992, Defendant entered a plea of no contest to two counts of attempting to commit the felony of criminal sexual penetration in the first degree and three counts of criminal sexual contact of a minor in the third degree. Defendant was sentenced to a total term of incarceration of nine years with a presentence confinement credit of seventy-eight days—the time spent in BCDC prior to his release to house arrest. Defendant filed a pro se motion on June 16, 1995 seeking to correct the judgment and sentence to allow him credit for the time he spent on house arrest. After a non-evidentiary hearing—in which Defendant was represented by the public defender—the district court denied the credit on two general grounds. First, the court felt that since the house arrest was at a private home and not at any place controlled by the State through correctional officers or otherwise, the confinement was not sufficiently jail-like. Second, the Court gave literal effect to the prior order, noting that at bottom it was an order of release, not of confinement or custody.

*ANALYSIS*

4. The courts in New Mexico have not had occasion to consider whether presentence confinement credit should be given for time spent not at a jail or other conventional correctional facility, but at a residence under conditions of release which limit the defendant's freedom of movement to some degree. We start our analysis with Section 31–20–12 which provides: "A person held in official confinement on suspicion or charges of the commission of a felony shall, upon conviction of that or a lesser included offense, be given credit for the period spent in presentence confinement against any sentence finally imposed for that offense." This provision, unchanged since its enactment in 1967, mandates that credit be given for time spent in "official confinement" prior to sentence. The statute does not, however, provide a definition or other indication of what may qualify as official confinement triggering the credit. Our basic task when interpreting any statute, of course, is to give effect to the legislature's intent. *Key v. Chrysler Motors Corp.*, 121 N.M. 764, 768–69, 918 P.2d 350, 354–55 (1996) (when interpreting statutes appellate courts give effect to the legislature's intent). The difficulty here is that there is precious little in the statute itself, or the circumstances surrounding its enactment, from which we can draw any definitive conclusion as to how the legislature intended the statute should be applied to factual circumstances such as those we have before us. The usual canons of legislative interpretation are also of little help. For example, there is no commonly accepted plain meaning of the term "official confinement" which we could apply with confidence to resolve the issue in this case. *See Sims v. Sims*, 122 N.M. 618, 622, 930 P.2d 153, 157 (1996) (the plain meaning rule requires a court to give the effect to the statute's language and refrain from further interpretation when the language is clear and unambiguous).

5. There are two sources of interpretative aid upon which we can draw other than the language of the statute itself: (1) other statutes containing similar language; and (2) case law applying the statute. NMSA 1978, Section 30–1–12(H) (Repl.Pamp.1994) defines a similar term as follows: " 'lawful custody or confinement' means the holding of any person pursuant to lawful authority, including, without limitation, actual or conseructive [constructive] custody of prisoners temporarily outside a penal institution, reformatory, jail, prison farm or ranch[.]" Defendant asserts that this definition, when read in conjunction with Section 31–20–12, establishes that the "legislature has decided to liberally grant presentence confinement time." We do not believe the statutes can bear that broad an interpretation even assuming they should be read in *pari materia*, but they do offer a small insight.

6. The terms used in the two statutes are not identical, but it is reasonable to treat "lawful custody or confinement" and "official confinement" as closely related, if not functionally equivalent, concepts. Section 30–1–12(H) was enacted in 1963 as part of a general revision of the entire criminal code and has not been amended since. *See* 1963 N.M.Laws, ch. 303, § 1–13(H). Thus, it was in place when Section 31–20–12 was enacted in 1967. The terms "lawful custody" and "confinement" or variations of them are used primarily in the statutes prohibiting escape from custody.[1] The escape statutes, combined with the reference in Section 30–1–12(H) to constructive custody outside a penal institution, reformatory or jail, lead to the conclusion that a person can be in confinement outside the four walls of a prison or jail or other institution in which inmates are controlled by the police or other correctional officials. None of these provisions provide any specific guidance, however, as to the extent of limitation of freedom necessary to require a finding that a person should be

---

1. *See* NMSA 1978, §§ 30–22–7 (unlawful rescue), 30–22–8 (escape from jail), 30–22–9 (escape from penitentiary), 30–22–10 (escape from custody of a peace officer), 30–22–11 (assisting escape), 30–22–11.1 (escape from the custody of Children, Youth and Families Department), 30–22–11.2 (aggravated escape from the custody of CYFD), 30–22–12 (furnishing articles for prisoner's escape), 30–22–13 (furnishing drugs or liquor to a prisoner), 30–22–16 (possession of deadly weapon or explosive by prisoner), 30–22–19 (unlawful assault on any jail) (Repl.Pamp.1994), and § 33–2–46 (escape from inmate release program) (Repl.Pamp.1990).

deemed to be in official confinement even though not in prison or jail.

7. New Mexico cases interpreting Section 31–20–12 provide a general framework for analysis, but they do not provide any specific guidance. In *State v. Ramzy*, 98 N.M. 436, 437, 649 P.2d 504, 505 (Ct.App.1982) we observed that the statute is mandatory. In *State v. La Badie*, 87 N.M. 391, 393, 534 P.2d 483, 485 (Ct.App.1975), we held that a defendant was entitled to credit for time spent at the state hospital where he had been committed after being found incompetent to stand trial. In *State v. Clah*, No. 17,222, slip op. at 5 (N.M.Ct.App. June 4, 1997) decided today, we interpret *La Badie* to mean that actual incarceration in a jail facility is not an absolute prerequisite to a finding that a person has been in official confinement under Section 31–20–12. *See State v. Watchman*, 111 N.M. 727, 734–35, 809 P.2d 641, 648–49 (Ct. App.1991), *overruled on other grounds as recognized in State v. Hosteen*, 122 N.M. 228, 232, 923 P.2d 595, 599 (Ct.App.), *cert. granted*, 122 N.M. 227, 923 P.2d 594 (1996). Thus, our cases teach that under the statute actual jail time is not required to earn the credit. Again, however, there is no specific guidance as to the type of limitation of freedom necessary to find confinement outside a place of incarceration. *La Badie*, for example, presents a very different factual circumstance than is present here. Commitment to a locked facility from which the defendant may not voluntarily leave, even though he is not subject to control by police or correctional officers, is obviously very different from home detention or house arrest.

8. Interestingly, the basic purpose of the statute is also of little value in deciding the issue before us. We have observed that "[t]he purpose of Section 31–20–12 is to give some relief to persons who, because of an inability to obtain bail, are held in custody." *State v. Howard*, 108 N.M. 560, 562, 775 P.2d 762, 764 (Ct.App.1989). In this case, Defendant was not in jail after his release to house arrest. The purpose behind Section 31–20–12 would thus be served only to the extent that the lack of bail resulted in significantly more onerous conditions of release. And, that is the basic question presented by this appeal: whether the conditions placed on Defendant when he was released from BCDC and placed on house arrest were sufficiently onerous to be deemed official confinement.

9. Having exhausted New Mexico sources, we turn to authority from other states. We do so cautiously, however, because the sentencing statutes in other states may vary in the type of detention necessary to earn the credit, the time frame in which such credit may be earned, and whether the credit is mandatory or discretionary. Some statutes, for example, explicitly require detention in a jail or prison. *See, e.g.*, Mich. Comp.Laws § 769.11b (1996), *construed in People v. Scott*, 216 Mich.App. 196, 548 N.W.2d 678, 679–80 (1996). Since New Mexico's statute does not explicitly require detention in a jail or prison, cases from these states may not be helpful.

10. With due regard for statutory differences, however, it appears that on balance, the weight of non-federal authority supports the State's position. *See State v. Climer*, 127 Idaho 20, 896 P.2d 346, 349 (Ct.App.1995) ("The majority of courts interpreting whether the term house arrest constitutes being 'in custody' have held that it does not."); *People v. Ramos*, 138 Ill.2d 152, 149 Ill.Dec. 273, 561 N.E.2d 643, 647 (1990) (period of home confinement was not "time spent in custody" within meaning of statute); *see also State v. Reynolds*, 170 Ariz. 233, 823 P.2d 681, 683 (1992) (en banc) (the words "in custody" mean actual incarceration in a prison or jail); *State v. Pettis*, 149 Wis.2d 207, 441 N.W.2d 247, 250 (Ct.App.1989) (home detention as a condition of bail does not render defendant in custody for purposes of receiving sentencing credit); *People v. Reinertson*, 178 Cal.App.3d 320, 223 Cal.Rptr. 670, 674 (1986) (home detention, as a condition of probation, does not constitute "in custody" for sentencing credit).

11. These cases generally contrast the conditions encountered by Defendant in jail with the normal experience of house arrest or home detention and conclude that the latter is simply not restrictive enough to qualify for credit. The analysis was stated most succinctly by the court in *Ramos*:

Home confinement, though restrictive, differs in several important respects from

confinement in a jail or prison. An offender who is detained at home is not subject to the regimentation of penal institutions and, once inside the residence, enjoys unrestricted freedom of activity, movement, and association. Furthermore, a defendant confined to his residence does not suffer the same surveillance and lack of privacy associated with becoming a member of an incarcerated population.

149 Ill.Dec. at 277, 561 N.E.2d at 647.

12. The cases supporting Defendant's position undertake essentially the same analysis but simply conclude that even though defendant was outside the confines of a jail, the conditions imposed were sufficiently onerous to earn the credit. *See Dedo v. State,* 343 Md. 2, 680 A.2d 464, 470 (1996) (home detention allowable as credit where defendant is punishable for escape for unauthorized departure from the place of confinement); *YellowBear v. State,* 874 P.2d 241, 245 (Wyo.1994) (defendant entitled to credit for time spent in alcoholism treatment facility if charge of escape from official detention will lie); *Nygren v. State,* 658 P.2d 141, 146 (Alaska.Ct.App.1983) (restraints on defendant's freedom of movement and association sufficiently strict to constitute custody for purposes of sentence credit statute); *Grant v. State,* 99 Nev. 149, 659 P.2d 878, 879 (1983) (per curiam) (restraints on liberty in a residential drug treatment program substantially equivalent to incarceration may warrant sentencing credit); *State v. Reyes,* 207 N.J.Super. 126, 504 A.2d 43, 51–52 (Ct.App.Div. 1986) (credit for time spent in residential drug treatment facility available only if restrictions so confining that violations constitute offense of escape); *In re McPhee,* 141 Vt. 4, 442 A.2d 1285, 1286 (1982) (sentencing credit properly granted for time spent in a residential alcohol treatment program where supervision and restrictions on defendant's liberty were equivalent to incarceration).

13. One of the distinguishing factors relied on in cases accepting Defendant's position is whether the defendant would be subject to a charge of escape for an unauthorized departure from the place of confinement. For example, in *Dedo,* the court allowed credit for home detention because the defendant was punishable for the crime of escape pursuant to the home detention contract he entered into with his custodian. The defendant's liability to a charge of escape was enough to distinguish two prior Maryland cases in which home detention credit had not been allowed. We agree with the *Dedo* court that "where an individual is punishable for escape for any unexcused absence from the place of confinement, his confinement is necessarily involuntary." 680 A.2d at 470.

14. The State relies heavily on federal case law placing strict limits on presentence credit in the federal system. *In Reno v. Koray,* 515 U.S. 50, 56–66, 115 S.Ct. 2021, 2025–29, 132 L.Ed.2d 46 (1995) the United States Supreme Court construed the federal presentence credit statute (18 U.S.C. § 3585(b) (1994)) in light of the relevant sections of the Bail Reform Act of 1984 (18 U.S.C. §§ 3142, 3143 (1994)), and certain Bureau of Prisons (BOP) regulations to hold that a defendant suffers "official detention" under Section 3585(b) only when committed to the Attorney General's custody and, thus, subject to BOP control. Respondent Koray was committed by court order to a community treatment center from which he was not free to leave; nonetheless he was outside the direct custody and control of the BOP, and therefore he was deemed not to be in official detention. The result in *Reno* is very dependent on the statutory structure for processing defendants through the federal criminal system. The federal scheme does not share many similarities with New Mexico's system, and to that extent, the holding in *Reno* is not useful in interpreting our statutes.

15. There are other facets of *Reno* which are useful, however. The Court felt that the identity of the custodian is significant as a measure of the restrictions placed on the defendant's liberty and movement. *Id.* at 62–64, 115 S.Ct.at 2028. For example, a person placed in the custody of BOP was subject to BOP discipline and to summary reassignment to different places of confinement without need for judicial intervention. The government could thus act swiftly and summarily in response to defendant misconduct; clearly a significant stricture on a de-

fendant's freedom. In addition, the Court was concerned with providing a bright-line test for application of the credit in order to avoid fact intensive inquiries by the district courts as to whether a defendant released on bail was subject to "jail-type confinement." *Id.* at 64, 115 S.Ct. at 2028–29.

16. The identity of the custodian is a common sense marker which recommends itself as a consideration in any inquiry as to whether a person is in official confinement. Similarly, it makes sense to simplify the sentencing court's inquiry to the extent possible. Neither of these considerations is determinative, however, under New Mexico's statutes and cases. We have already observed that Section 31–20–12 does not require detention in a jail or prison to apply, and we have also observed that confinement can be to some degree constructive rather than actual under Section 30–1–12(H). Further, our cases have demonstrated some willingness to engage in fact finding in this area. We are not inclined to foreclose the exercise of reasonable flexibility by sentencing courts through the adoption of too bright a line.

17. Distilling all of these considerations, we hold that Section 31–20–12 applies to time spent outside a jail, prison or other adult or juvenile correctional facility when (1) a court has entered an order releasing the defendant from a facility but has imposed limitations on the defendant's freedom of movement, OR the defendant is in the actual or constructive custody of state or local law enforcement or correctional officers; and (2) the defendant is punishable for a crime of escape if there is an unauthorized departure from the place of confinement or other non-compliance with the court's order.

18. This approach provides reasonable certainty to defendants and the state, does no damage to, and in fact, reconciles our prior cases, including *La Badie* and *Watchman*, while preserving application of Section 31–20–12 to serve its intended purpose and avoiding an interpretation of that statute which might serve as a disincentive to presentence release. *See Howard*, 108 N.M. at 561, 775 P.2d at 763. We recognize that under this test the vast majority of defendants released from jail, whether on bail,

personal recognizance, or unsecured appearance bond, will not qualify for the credit. The conditions included in a release order modeled after Rules 9–302 and 9–303 NMRA 1997 as they exist today would normally not be sufficient to earn the credit. It could well be that an additional stipulation specifically addressing the potential for an escape charge may have to be included in the release order.

19. Measuring Defendant's house arrest against this standard, he was not entitled to credit. He was not in actual or constructive custody of law enforcement or correctional officers since he was released to the care of a relative. Perhaps more telling, Defendant was not subject to a charge of escape if he failed to abide by the terms of his house arrest. The district court could have revoked the order allowing house arrest, but no new charges could have been brought. Thus, his non-compliance with house arrest would only have resulted in a revocation of his order of release. *See* Rules 9–302 and 9–303.

20. We appreciate that under Defendant's house arrest order, he could have been charged with failure to appear under NMSA 1978, Section 31–3–9 (Repl.Pamp.1984) if he failed to appear for trial, sentencing, or as otherwise required by the court. This potential, again, is present in all instances of release, whether limitations are placed on the defendant's freedom of movement or not. This potential legal hazard is different from an escape charge (which requires custody of some kind) and, thus, is not sufficient to warrant a finding of official confinement by itself.

21. The order of the district court is affirmed.

22. **IT IS SO ORDERED.**

BOSSON and ARMIJO, JJ, concur.