This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-35771**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ALBERTO CRUZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Neil C. Candelaria, District Judge**

Hector H. Balderas, Attorney General
Emily C. Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Matthew J. Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**B. ZAMORA, Judge.**

**{1}** A jury convicted Defendant of criminal sexual contact of a minor (CSCM), contrary to NMSA 1978, Section 30-9-13(A) (2003), false imprisonment, contrary to NMSA 1978, Section 30-4-3 (1963), and two counts of child abuse (intentionally caused, no death or great bodily harm), contrary to NMSA 1978, Section 30-6-1(D) (2009). Defendant appeals his convictions, arguing that the district court abused its discretion by requiring Defendant's counsel to refresh Victim's memory prior to impeaching her testimony and denying Defendant's motion to sever charges. Defendant

also contends that the district court erred in denying his motion for a speedy trial and failing to award him presentence confinement credit. We affirm.

## BACKGROUND

**{2}**     After two separate indictments were joined, this case proceeded to trial and the following evidence was taken from testimony given by several witnesses. The first indictment involved what we will refer to throughout this opinion as "the dishwashing incident," which occurred in 2012 when Victim was approximately thirteen years old. At the time, she resided with her siblings, her mother, and Defendant. Victim's mother had left home one day while Victim remained in the house with her younger sister and Defendant. Victim testified that while she was washing dishes, Defendant groped her breasts over her clothes and rubbed his penis against her. According to Victim, Defendant then pulled down her pants and underwear so that they came off and then forcefully took her to another room and restrained her on the bed so she was unable to leave. Victim's younger sister then entered the room holding Victim's pants and Defendant allowed Victim to leave. Victim explained when she later returned to the kitchen, Defendant "hit [her] butt" and pushed her against the wall, choking her with both hands. Later that day, Victim told her mother what had happened, and they reported the sexual abuse to the police. As a result of this incident, Defendant was indicted on charges of kidnapping, child abuse, and two charges of CSCM and was offered a plea agreement to probation. However, the proposed plea agreement was withdrawn after Victim disclosed additional allegations of abuse by Defendant.

**{3}**     Law enforcement investigated the new allegations and the State eventually indicted Defendant with additional and more serious charges of criminal sexual penetration of a minor in the first degree (CSPM), contrary to NMSA 1978, Section 30-9-11(D) (2009), an additional charge of CSCM, and an additional charge of child abuse. The second indictment included allegations of multiple incidents of physical and sexual abuse when Victim was eleven or twelve years old, all of which occurred in 2010 or 2011, prior to the dishwashing incident.

**{4}**     The two indictments were joined and following a jury trial, Defendant was convicted of CSCM, false imprisonment, and two counts of child abuse, but was acquitted of the remaining charges. He now appeals.

## DISCUSSION

### I.     Ruling Regarding Impeachment Was Harmless Error

**{5}**     Defendant argues that the district court improperly prohibited defense counsel from impeaching Victim's testimony by requiring that counsel first refresh Victim's recollection with her prior inconsistent statement. The State concedes that the district court's requirement was improper but contends that any error resulting from the district court's ruling was harmless.

**{6}** "We examine the admission or exclusion of evidence for [an] abuse of discretion, and the [district] court's determination will not be disturbed absent a clear abuse of that discretion." *State v. Stanley*, 2001-NMSC-037, ¶ 5, 131 N.M. 368, 37 P.3d 85. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted). However, "[w]e review de novo whether the district court applied the correct evidentiary rule[.]" *State v. Astorga*, 2015-NMSC-007, ¶ 29, 343 P.3d 1245.

**{7}** During trial Victim testified that as she washed dishes, Defendant not only touched her breasts, he also rubbed his penis against her buttocks. This testimony was inconsistent with Victim's statement to the safehouse interviewer wherein Victim denied that Defendant touched any part of her body other than her breasts. When defense counsel attempted to impeach Victim's testimony with the safehouse video, the State objected. The district court sustained the objection and required defense counsel to give Victim the opportunity to review the safehouse interview to refresh her recollection. The district court later ruled that defense counsel could use the proffered video to impeach Victim's credibility. However, for reasons that are not indicated in the record, defense counsel instead impeached Victim's testimony with the safehouse interview transcript instead of the video evidence.

**{8}** As a general matter, a party need not refresh the recollection of a witness with extrinsic evidence of a prior inconsistent statement before impeaching the witness's testimony. *Id.* ¶ 39 (explaining that "under 'current practice,' the witness need not even be confronted with the prior statement before extrinsic evidence is presented as long as the witness has an opportunity to 'explain or deny' the statement at some point during the proceeding"). The key factor is "simply whether the substance of the witness's trial testimony is inconsistent with the prior statement." *Id.* ¶ 40 (emphasis omitted). We conclude that the district court abused its discretion by requiring Defendant to refresh Victim's recollection before impeaching her prior inconsistent statement.

**{9}** Notwithstanding the district court's error, we conclude it was harmless. Since the error is evidentiary and does not implicate a constitutional right, we review it for non-constitutional harmless error. *State v. Serna*, 2013-NMSC-033, ¶ 22, 305 P.3d 936. "[N]on-constitutional error is harmless when there is no reasonable probability the error affected the verdict." *State v. Tollardo*, 2012-NMSC-008, ¶ 36, 275 P.3d 110 (emphasis, internal quotation marks, and citation omitted). In this case, the alleged error relates to a single instance in which Defendant was not permitted to impeach Victim in the manner he preferred. Nevertheless, after reviewing the record, we note that Defendant was able to demonstrate, after refreshing Victim's recollection, that her testimony was inconsistent. Apart from the district court's error, the record reveals that Defendant brought out numerous inconsistencies in Victim's testimony during cross-examination. And to the extent Defendant argues that the error impacted his ability to challenge Victim's credibility, we note that the jury acquitted Defendant on multiple charges, including the most serious CSPM charge, which suggests Defendant was ultimately successful in his impeachment. Given this, we conclude that Defendant has not demonstrated that there is a "reasonable probability" that the alleged error affected the

jury's verdict. *See Astorga*, 2015-NMSC-007, ¶¶ 42-43 (explaining that when inconsistencies in testimony are laid in front of the jury, there is no reasonable probability that the failure to admit extrinsic evidence affected the verdict).

## II.     Joinder of Charges in Defendant's Indictments Was Harmless Error

**{10}**    We next address whether the district court abused its discretion in denying Defendant's motion to sever charges. Defendant argued below that the failure to sever the charges in the two indictments would impact his ability to present his theory of defense—that Victim's "unhappiness with the plea agreement [for the charges in the first indictment] gave her a motive to make up the allegations behind the charges in the second indictment." According to Defendant, he was prejudiced by the joinder because his defense to the second indictment required him to present evidence that he was willing to plead guilty to the first set of charges.

**{11}**    "[We] review [the] denial of a motion to sever for an abuse of discretion." *State v. Roybal*, 1992-NMCA-114, ¶ 13, 115 N.M. 27, 846 P.2d 333. "Even when the trial court abuses its discretion in failing to sever charges, appellate courts will not reverse unless the error actually prejudiced the defendant." *State v. Romero*, 2019-NMSC-007, ¶ 31, 435 P.3d 1231 (internal quotation marks and citation omitted).

**{12}**    Even if we assume the district court erred in denying Defendant's motion to sever, we nonetheless conclude that Defendant has failed to demonstrate actual prejudice and therefore any error by the district court was harmless. "[I]mproper joinder is subject to a harmless error analysis, and requires reversal only if the misjoinder results in actual prejudice because it had [a] substantial and injurious effect or influence in determining the jury's verdict[.]" *State v. Paiz*, 2011-NMSC-008, ¶ 19, 149 N.M. 412, 249 P.3d 1235 (internal quotation marks and citations omitted). We consider the following factors in determining whether Defendant suffered actual prejudice by the district court's failure to sever the charges: "(1) the prosecution intertwining the offenses in opening statement, during its case-in-chief, or in closing argument; (2) the defendant being found guilty on all counts; (3) factual similarities linking the offenses; (4) offenses that are inflammatory in nature; (5) unusually long and complex trials; and (6) a conviction on a charge where the evidence is thin." *State v. Lovett,* 2012-NMSC-036, ¶ 56, 286 P.3d 265 (internal quotation marks and citation omitted). Conversely, the following factors weigh against prejudice: "(1) dissimilar offenses such that a jury would not confuse them; (2) the defendant being acquitted of some charges; and (3) proper jury instructions that adequately make clear to the jury that it must not consider evidence inadmissible to a particular count when coming to a verdict on that count." *Id.* (internal quotation marks and citation omitted).

**{13}**    Defendant argues that his defense to the second indictment required him to present evidence that he was willing to plead guilty to the charges in the first indictment and as such, he was prejudiced by the joinder. We disagree. As an initial matter, the record is devoid of any evidence that Defendant accepted the plea offer or admitted to the charges in the first indictment. Indeed, Defendant even objected to the phrase "plea

agreement" during trial, leading the State to apologize and rephrase its question. And, it was Defendant, not the prosecution that chose to introduce the existence of the plea offer. We would note, however, the prosecutor improperly commented during closing argument that based on the plea agreement, the jury could infer Defendant admitted his guilt to the dishwashing incident. While defense counsel was able to address this inappropriate comment and clear up any confusion during her closing argument, we admonish the State from making similar comments in the future.

**{14}** Defendant also argues the evidence against him was "thin." We are unpersuaded by Defendant's argument, as there was ample evidence supporting Defendant's convictions. Victim testified, in detail, about the sexual assault supporting the charges contained in the first indictment. Her testimony was corroborated by Victim's mother's testimony about Victim's sad demeanor and the mother's observance that Victim had been crying shortly after Defendant abused her. Victim's little sister told Victim's mother she "took [Victim] her pants" during the dishwashing incident. Moreover, the other factors do not support Defendant's claim of prejudice. The trial was not uniquely long or complex, Defendant was acquitted of numerous charges, including the most serious charges, and there were factual similarities between the joined charges as they involved Defendant sexually abusing the same victim in the same location. Without any indication of actual prejudice, we hold that any error resulting from the district court's refusal to sever was harmless.

### III. Defendant's Right to a Speedy Trial Was Not Violated

**{15}** On appeal, Defendant argues that his right to a speedy trial was violated due to a delay of approximately thirty-seven months between his indictment and trial in this matter. The Sixth Amendment guarantees that in criminal cases, "the accused shall enjoy the right to a speedy . . . trial[.]" U.S. Const. amend. VI; *see also* N.M. Const. art. II § 14 ("[T]he accused shall have the right to . . . a speedy . . . trial[.]"). New Mexico courts analyze claims of speedy trial violations using the four-factor test articulated by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972), balancing the length of delay, the reasons for the delay, the defendant's assertion of his speedy trial right, and the actual prejudice to the defendant. *State v. Garza*, 2009-NMSC-038, ¶ 13, 146 N.M. 499, 212 P.3d 387. Because the speedy trial right is "amorphous, slippery, and necessarily relative," we base our analysis on the "peculiar facts and circumstances of each case." *Id.* ¶ 11 (internal quotation marks and citation omitted). Thus, "we give deference to the district court's factual findings, but we review the weighing and the balancing of the *Barker* factors de novo." *State v. Spearman*, 2012-NMSC-023, ¶ 19, 283 P.3d 272 (alterations, internal quotation marks, and citation omitted).

### A. Length of Delay

**{16}** In examining whether a delay amounts to a violation of the right to a speedy trial, we conduct a threshold analysis of the length of the delay, taking into consideration the difficulty of the case. *See id.* ¶ 21. If we determine a delay is presumptively prejudicial,

we then consider the remaining three *Barker* factors to decide whether a violation has occurred.

**{17}**   Based on our review of the record, we agree with the district court's conclusion that: (1) Defendant's right to a speedy trial attached when Defendant was indicted on October 11, 2012, and (2) this case is of intermediate complexity and as such, the presumptively prejudicial delay is fifteen months. *Id.* ("A delay of trial of one year is presumptively prejudicial in simple cases, fifteen months in intermediate cases, and eighteen months in complex cases."). Because the delay in this case was approximately thirty-seven months, over twice the presumptive period, this factor weighs heavily against the State. *See State v. Moore*, 2016-NMCA-067, ¶ 11, 378 P.3d 552 (holding that "a delay approximately twice as long as the threshold weighs heavily against the [s]tate").

## B.   Reason for the Delay

**{18}**   We turn to the reasons for the delay in this case. The district court found that approximately thirteen months weighed slightly against the State, sixteen months were neutral, and seven months were attributed to Defendant. On appeal, Defendant only disputes the district court's finding that the delay from January 21, 2014 to June 2, 2014, was reasonable and justified and weighed neutrally. *See Garza*, 2009-NMSC-038, ¶¶ 25-27 (stating negligent or administrative delays weigh less heavily against the state and a delay justified for a valid reason is neutral and does not weigh against the state). We therefore limit our analysis to the disputed period.

**{19}**   Defendant argues the district court's finding was erroneous because the joinder of charges delayed Defendant's trial for the charges in the first indictment. The State contends that it was obligated to request a continuance on January 21, 2014, because it was required to join additional charges under Rule 5-203(A) NMRA. Assuming, without deciding, that the five-month continuance for the investigation of the additional charges weighs against the State, the ultimate result of our analysis remains unchanged. Even with this assumption, at most, this factor weighs only slightly against the State.

## C.   Assertion of Right

**{20}**   In analyzing the third *Barker* factor, "we assess the timing of the defendant's assertion and the manner in which the right was asserted." *Garza*, 2009-NMSC-038, ¶ 32. Based on our review of the record, we agree with the district court that Defendant's three pro forma requests for speedy trial and the motion to dismiss for violation of speedy trial filed approximately three months before trial weigh only slightly in Defendant's favor. *See State v. Gallegos*, 2016-NMCA-076, ¶ 24, 387 P.3d 296 ("[P]ro forma assertions are weighted towards [the d]efendant, but only slightly."); *State v. Ortiz-Burciaga*, 1999-NMCA-146, ¶ 35, 128 N.M. 382, 993 P.2d 96 (assigning little weight to the defendant's motion to dismiss "because most of the delay had already passed and he moved for dismissal rather than for a prompt trial").

## D. Prejudice

**{21}**     We next determine whether Defendant was prejudiced as a result of the delay in proceeding to trial. "The heart of the right to a speedy trial is preventing prejudice to the accused." *Garza*, 2009-NMSC-038, ¶ 12. To determine if Defendant was prejudiced, we consider whether there was (1) oppressive pretrial incarceration; (2) undue anxiety and concern of the accused; and (3) impairment of Defendant's defense. *See id.* We limit our analysis to Defendant's sole argument that he was prejudiced due to the anxiety and concern arising from the impact the delay had on his employment.

**{22}**     Defendant argues that he was prejudiced because he lost employment during the pendency of this case. For Defendant to prove prejudice, he must show that the "anxiety [he] suffered [was] undue." *Spearman*, 2012-NMSC-023, ¶ 36 (internal quotation marks and citation omitted). Here, Defendant's loss of employment resulted from a failed background check, and there was no evidence to indicate that, had the case not been delayed, the results of the background check would have been different. We agree with the district court's conclusion that Defendant failed to establish particularized prejudice based on his alleged loss of employment. *See Garza*, 2009-NMSC-038, ¶ 35 (explaining that "without a particularized showing of prejudice," we will not speculate as to the impact or "degree of anxiety a defendant suffers"). Accordingly, this factor weighs in favor of the State.

## E. Balancing the Factors

**{23}**     In sum, we weigh the length of delay heavily against the State, the reasons for the delay, at most, weigh slightly against the State, and the assertion of the right slightly in Defendant's favor. However, because Defendant failed to establish particularized prejudice, we do not weigh this factor against the State. We hold that the State did not violate Defendant's right to a speedy trial. *Id.* ¶ 40 (holding that because "[the d]efendant failed to demonstrate particularized prejudice" and "the other factors do not weigh heavily in [the d]efendant's favor[,]" the defendant's right to a speedy trial was not violated); *State v. Hayes*, 2009-NMCA-008, ¶ 16, 145 N.M. 446, 200 P.3d 99 (holding that even though the first three *Barker* factors weigh against the state, "the absence of prejudice to [the d]efendant fulfills the [s]tate's burden to overcome the presumption of prejudice that arises from the delay in this case").

## IV. Presentence Confinement Credit Was Properly Denied

**{24}**     We next address Defendant's argument that the district court erred in denying him presentence confinement credit for the time he spent on electronic monitoring and pretrial services supervision. Presentence confinement credit is governed by NMSA 1978, Section 31-20-12 (1977). Section 31-20-12 provides that a defendant "held in official confinement on suspicion or charges of the commission of a felony shall, upon conviction of that or a lesser included offense, be given credit for the period spent in presentence confinement against any sentence finally imposed for that offense." Because "[w]e are required to construe Section 31-20-12 in order to determine whether

[the d]efendant had a right to presentence credit[,]" we review the issue de novo. *State v. Romero*, 2002-NMCA-106, ¶ 6, 132 N.M. 745, 55 P.3d 441.

**{25}** We have previously held that time spent outside of jail qualifies as official confinement if:

> (1) a court has entered an order releasing the defendant from a facility but has imposed limitations on the defendant's freedom of movement, OR the defendant is in the actual or constructive custody of state or local law enforcement or correctional officers; and (2) the defendant is punishable for a crime of escape if there is an unauthorized departure from the place of confinement or other non-compliance with the court's order.

*State v. Fellhauer*, 1997-NMCA-064, ¶ 17, 123 N.M. 476, 943 P.2d 123. We conclude that Defendant does not meet the first prong and as such, we need not address the second prong.

**{26}** Defendant contends that the first prong of *Fellhauer* is satisfied because the district court had "entered an order releasing the defendant from a facility but ha[d] imposed limitations on the defendant's freedom of movement." *Id.* Defendant's freedom of movement was not limited to a sufficient degree to qualify as "official confinement" under *Fellhauer*. We have previously held that the district court should grant presentence confinement credit "under conditions of house arrest that require the defendant to remain at home except to attend specified events such as treatment, work, or school." *State v. Guillen*, 2001-NMCA-079, ¶ 11, 130 N.M. 803, 32 P.3d 812. Here, however, Defendant was not on house arrest; he instead was bound only by a curfew, was free to travel within the county, and later was permitted to travel out of state for work. Under the circumstances here, time spent with a curfew is not "official confinement" under our statute, notwithstanding Defendant's participation in electronic monitoring. *See id.* ¶ 9 ("[A] curfew, without more, is an insufficient restriction on movement to entitle a defendant to presence credit."). Accordingly, we hold Defendant's movement was not sufficiently limited to qualify him for presentence confinement credit. Because the first prong of *Fellhauer* was not satisfied, we conclude that the district did not err in denying presentence confinement credit.

## CONCLUSION

**{27}** For the foregoing reasons, we affirm.

**{28}** **IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**MEGAN P. DUFFY, Judge**