This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38462**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**MARSHALL TAYLOR JR. a/k/a MARSHALL SCOTT TAYLOR a/k/a MARSHALL SCOTT TAYLOR JR.,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Jarod K. Hofacket, District Judge**

Hector H. Balderas, Attorney General
Emily Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

Patrick J. Martinez & Associates
Patrick J. Martinez
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**BACA, Judge.**

**{1}** Marshall Taylor Jr. (Defendant) was convicted of three counts of great bodily injury by vehicle (reckless driving counts) and one count of driving while under the influence of intoxicating liquor or drugs (DWI). On appeal, Defendant argues that (1) the district court erred by admitting Defendant's toxicology report and its results through a witness who did not test Defendant's blood sample or prepare the toxicology report, (2)

there was insufficient evidence to convict Defendant for all counts, (3) the district court erred in permitting hearsay evidence, (4) the district court erred by not giving the jury UJI 14-4512 NMRA, (5) the district court erred when it restricted the testimony of Defendant's accident reconstruction expert, and (6) the district court erred by denying Defendant additional presentence confinement credit.

**{2}** We reverse Defendant's DWI conviction and remand this case for a new trial as to that charge. We affirm his convictions as to the reckless driving counts.

## BACKGROUND

**{3}** Because this is a memorandum opinion and the parties are familiar with the facts and procedural history, we reserve discussion of specific facts as necessary for our analysis.

## DISCUSSION

### I.      Admission of the Toxicology Report and Results

**{4}** We first address Defendant's contention that his confrontation right was violated because Defendant's toxicology report was admitted through a witness, Ms. Janice Yazzie, who had no part in creating the report or testing the sample of blood provided by Defendant. The State concedes this issue, acknowledging that it was error to admit the toxicology report and agrees that Defendant's conviction for DWI should be reversed and remanded for a new trial. While we are not required to accept the State's concession, *State v. Alvarez*, 2018-NMCA-006, ¶ 24, 409 P.3d 950, we accept it under these circumstances as supported by our precedent and offer a brief analysis.

**{5}** Because Defendant did not object to the admission of the report and testimony, our review of this claim is limited to fundamental error. *See State v. Martinez*, 2007-NMSC-025, ¶ 25, 141 N.M. 713, 160 P.3d 894 (reviewing a defendant's Confrontation Clause claim for fundamental error even though the issue was not preserved).

**{6}** Our holding in *State v. Dorais*, 2016-NMCA-049, 370 P.3d 771 is conclusive. Like this case, *Dorais* involved the testimony of a State Scientific Laboratory Division (SLD) analyst, who neither conducted nor observed the laboratory testing, yet testified about the defendant's blood test results based solely on a review of the nontestifying analyst's report. *Id.* ¶ 32. In *Dorais,* this Court held that under those circumstances the witness's testimony, which conveyed the nontestifying analyst's statements, violated the Confrontation Clause under *Bullcoming v. New Mexico*, 564 U.S. 647, 673 (2011). *See Dorais*, 2016-NMCA-049, ¶ 32; *see also Bullcoming*, 564 U.S. at 657 (holding "[a]s a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness"). Thus, Ms. Yazzie's testimony, which relied entirely on the contents of the report without Ms. Yazzie engaging in any independent investigation to determine the validity of the results

listed in the report, is the kind of testimony that is prohibited under *Dorais* and *Bullcoming. See, e.g., State v. Navarette*, 2013-NMSC-003, ¶ 22, 294 P.3d 435 (holding that a forensic pathologist who does not perform the autopsy may nonetheless offer an expert opinion *as long as the forensic pathologist does not merely repeat the subjective observations made by the nontestifying pathologist who performed the autopsy* (emphases added)).

**{7}**     Ultimately, as the State concedes, without Ms. Yazzie's testimony there was no evidence of Defendant's level of impairment, an essential element of the offense. *See* UJI 14-4502 NMRA. Therefore, we conclude that the admission of Ms. Yazzie's testimony and the toxicology report constituted fundamental error, and reverse Defendant's conviction for DWI and remand this matter to the district court for a new trial as to that charge. *See State v. Martinez*, 1996-NMCA-109, ¶ 21, 122 N.M. 476, 927 P.2d 31 (remanding for new trial where the defendant's confrontation right was violated).

## II.     Sufficiency of the Evidence: Reckless Driving Counts

**{8}**     Next, we consider Defendant's contention that there was insufficient evidence to sustain his convictions as to the reckless driving counts. Because the standard of review for sufficiency of the evidence is well established, we will not restate it here. *See State v. Montoya*, 2015-NMSC-010, ¶¶ 52, 53, 354 P.3d 1056 (providing a comprehensive statement of the standard of review for sufficiency of the evidence challenges). Applying the standard, and having carefully reviewed the record, we conclude that there was sufficient evidence to sustain the convictions of Defendant as to the reckless driving counts.

**{9}**     To find Defendant guilty of the reckless driving counts, the jury was instructed that the State had to prove each of the following elements of these crimes beyond a reasonable doubt: (1) "[D]efendant operated a motor vehicle in a reckless manner"; (2) "[D]efendant's reckless driving caused great bodily injury to [name of person harmed]"; (3) "This happened in New Mexico, on or about the 21st day of November, 2016." UJI 14-4504 NMRA.

**{10}**     Defendant argues on appeal that the evidence did not support the jury's determination that (1) Defendant operated a motor vehicle and (2) in a reckless manner. Defendant contends that the State failed to prove that he was driving at the time of the accident because "only eyewitness testimony placed him in the vehicle shortly before and after the crash," his physical injuries were consistent with being the passenger, and Kim Jensen admitted to driving the vehicle. As well, Defendant contends that the evidence establishes that he was not driving in a reckless manner because the vehicle which he was supposedly driving was traveling four miles per hour below the speed limit at the time of the accident. We will consider each of these contentions in turn. However, before doing so, we point out that it is undisputed that Defendant was *in* the Mustang that crashed into the minivan and no evidence suggests another male was present.

**{11}**  We first address Defendant's contention that there was insufficient evidence to establish that he was the driver of the Mustang at the time of the accident. Throughout this case, at trial and on appeal, Defendant has maintained that he was not driving the Mustang at the time of the accident. However, two eyewitness accounts identified a male as the driver of the Mustang that crashed into the minivan. As well, the driver of the minivan that the Mustang crashed into testified that she saw a male driving the Mustang at the time it crashed into the minivan. Moreover, Ms. Jensen, the other occupant and owner of the Mustang, testified that Defendant "crashed [her] car" and that Defendant told her "he was going to turn himself in and do the right thing." Although Defendant argues that the testimony of some or all these witnesses is unreliable because their view of the passenger compartment of the Mustang was obstructed, and because Ms. Jensen told police investigating the accident that she was driving the Mustang at the time of the accident, we conclude that sufficient evidence supports the jury's finding that Defendant was the driver of the Mustang at the time it crashed into the minivan. As for Defendant's remaining contention that his injuries were consistent with that of a passenger, "[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [a d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{12}**  Next, we turn to Defendant's contention that even if he was the driver of the Mustang at the time of the accident, he was not driving it in a reckless manner. The jury was given an instruction by the district court that explained what constituted driving in a reckless manner. This instruction informed the jury that driving in a reckless manner was the operation of a motor vehicle "with willful disregard of the safety of others and at a speed or in a manner that endangered or was likely to endanger any person."

**{13}**  Our review of the record reveals that multiple witnesses testified that just prior to the accident between the Mustang and the minivan, they saw the Mustang being driven at a high rate of speed, weaving in and out of traffic, being driven in the lane of oncoming traffic, and crash into the minivan in the minivan's lane of travel. As well, we note that even Defendant concedes that the evidence "clearly demonstrated" that his vehicle "drifted into the oncoming lane shortly before the crash." Consequently, we conclude that there was sufficient evidence for the jury to find that Defendant drove the Mustang in a reckless manner.

**{14}**  Therefore, the evidence that Defendant was driving the Mustang, coupled with corroborating testimony from witnesses at the scene that a male was the driver, in addition to evidence of the Mustang traveling fast and passing vehicles by using the oncoming lane before colliding with the minivan, adequately established that Defendant was the driver of the Mustang and that he drove it in a reckless manner. *See State v. Hunter*, 1933-NMSC-069, ¶ 6, 37 N.M. 382, 24 P.2d 251 ("[T]he testimony of a single witness may legally suffice as evidence upon which the jury may [find] a verdict of guilt."). Because the jury was free to reject Defendant's version of the facts, and any contrary evidence, the evidence presented at trial indicates a sufficient factual basis for the jury to determine that Defendant was guilty of the reckless driving counts. *See State v. Astorga*, 2015-NMSC-007, ¶ 57, 343 P.3d 1245. Thus, viewing all evidence in the

light most favorable to the State, and disregarding contrary evidence and inferences, we conclude that there was sufficient evidence to support Defendant's convictions for his reckless driving counts. *See State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

## III. Hearsay Statements

**{15}** To the extent Defendant contends that the district court permitted improper hearsay testimony, Defendant does not identify which statements he is challenging, nor does he develop an argument as to the issue concerning these statements. Instead, Defendant claims the district court permitted "testimony from a medical record" and "alleged statements made by [Defendant] to medical staff," without directing this Court to the location in the record where these statements were made or specifically and accurately describing the statements themselves. "We will not search the record for facts, arguments, and rulings in order to support generalized arguments." *Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104. "This Court has no duty to review an argument that is not adequately developed." *Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701. "We will not review unclear arguments, or guess at what a party's arguments might be." *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (alteration, internal quotation marks, and citation omitted). "To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them." *Id.* "This creates a strain on judicial resources and a substantial risk of error. It is of no benefit either to the parties or to future litigants for this Court to promulgate case law based on our own speculation rather than the parties' carefully considered arguments." *Id.* Consequently, we do not consider Defendant's argument. *See State v. Clifford*, 1994-NMSC-048, ¶ 19, 117 N.M. 508, 873 P.2d 254 ("[R]eminding counsel that [the appellate courts] are not required to do their research.").

## IV. UJI 14-4512's Definition of "Actual [P]hysical [C]ontrol"

**{16}** Defendant next argues that the district court erred by not giving UJI 14-4512, an instruction that defines "actual physical control," to the jury. Defendant did not preserve this issue below. Although Defendant requested the instruction, he did not object to the district court's decision not to give this instruction and agreed that this instruction should not be given because it was inapplicable as there was no dispute that the Mustang was in motion. We, therefore, review for fundamental error. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134.

**{17}** Because the standard of review for fundamental error is well established, we will not restate it here. *See State v. Silva*, 2008-NMSC-051, ¶ 13, 144 N.M. 815, 192 P.3d 1192; *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633; *Benally*, 2001-NMSC-033, ¶ 16.

**{18}** Defendant argues his theory of defense—that he was not the driver of the vehicle at the time of the crash—entitled him to UJI 14-4512. Because Defendant's theory was

that he was not the driver of the vehicle, and not whether the vehicle was being driven at all, or that he was not in actual physical control of the vehicle at the time of the crash, UJI 14-4512's definition of "actual physical control" was inapplicable. UJI 14-4512 is used in cases where the defendant is charged with DWI and there are no witnesses who can testify that they saw the defendant's vehicle in motion and there is a lack of circumstantial evidence proving that the defendant drove while he was intoxicated. *See State v. Mailman,* 2010-NMSC-036, ¶ 28, 148 N.M. 702, 242 P.3d 269. This UJI instructs the jury, in its closing paragraph: "It is up to you to examine all the available evidence in its totality and weigh its credibility in determining whether the defendant *was simply using the vehicle as stationary shelter or actually posed a threat to the public by the exercise of actual control over it while impaired.*" UJI 14-4512 (emphases added). Here, there was no issue as to actual physical control, as explained by the *Mailman* Court, or whether Defendant was using the vehicle for shelter. The issue here was whether Defendant was the driver of the Mustang at the time that it crashed into the minivan. Consequently, we agree with the district court's decision to not give this instruction to the jury in this case. In fact, not only did the district court correctly hold that UJI 14-4512 was inapplicable, but it correctly recognized that the jury instruction would instead confuse the jury into thinking Defendant could be convicted solely because he was sitting in the driver's seat after the crash.

**{19}** Accordingly, we hold that the district court did not err in deciding not to give the jury UJI 14-4512, and that no reasonable juror would have been confused or misdirected by the omission of the jury instruction. *See Benally*, 2001-NMSC-033, ¶ 12.

## V. Accident Reconstruction Expert Testimony

**{20}** Defendant argues that the district court erred when it prohibited Defendant's expert witness, Mr. Maurice Moya, an accident reconstructionist expert, from testifying regarding the cause of injuries to Defendant and Ms. Jensen from the crash. We disagree.

**{21}** "Trial courts have broad discretion in admitting expert testimony as long as the expert (1) is qualified, (2) provides testimony that will assist the trier of fact, and (3) provides testimony regarding scientific, technical, or other specialized knowledge with a reliable basis." *State v. Consaul*, 2014-NMSC-030, ¶ 56, 332 P.3d 850 (internal quotation marks and citation omitted). We review the district court's admission or exclusion of evidence for an abuse of discretion, and we will not disturb its evidentiary ruling absent a clear abuse of that discretion. *State v. Stanley*, 2001-NMSC-037, ¶ 5, 131 N.M. 368, 37 P.3d 85. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

**{22}** In the first statement, Mr. Moya testified that Ms. Jensen's injury to her hip "occurs when a person is seated in the driver's seat." After this statement, the State

objected and argued that Mr. Moya's testimony was exceeding his area of expertise, accident reconstruction, and was wading into medical testimony. The district court sustained the State's objection but did not instruct the jury to disregard the statement. In the second statement, Mr. Moya testified that the seatbelt extractor device, depicted in Defendant's Exhibit N, "is what would have caused injuries to your right hip of the driver." The district court immediately directed the jury to disregard the testimony and instructed the witness to not testify as to any cause of any injury based on any photos.

**{23}** While there is no dispute that Mr. Moya was certified as an accident reconstruction expert, the district court barred Mr. Moya from testifying about the cause of the injuries because it was medical testimony. No evidence was presented at trial, and Defendant does not argue on appeal that Mr. Moya was qualified as anything but an accident reconstruction expert. Defendant instead argues that Mr. Moya should have been allowed to testify as to the injuries sustained by the occupants of the Mustang simply because he was qualified as an accident reconstruction expert, but cites to no controlling authority for this proposition. "[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists." *State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129. Without such authority, we see no error in the district court's decision to limit Mr. Moya's testimony to his only qualified area of expertise. *See, e.g.*, *State v. Bullcoming*, 2008-NMCA-097, ¶¶ 10-11, 144 N.M. 546, 189 P.3d 679.

## VI.    Presence Confinement

**{24}** *State v. Fellhauer* provides that a defendant awaiting trial or sentencing outside of the confines of a jail, prison, or other correctional facility is entitled to presence confinement credit when two conditions are met:

> (1) a court has entered an order releasing the defendant from a facility but has imposed limitations on the defendant's freedom of movement, OR the defendant is in the actual or constructive custody of state or local law enforcement or correctional officers; and (2) the defendant is punishable for a crime of escape if there is an unauthorized departure from the place of confinement or other non[]compliance with the court's order.

1997-NMCA-064, ¶ 17, 123 N.M. 476, 943 P.2d 123.

**{25}** Defendant, for his final point, argues that the district court erred by denying him presence confinement credit for the time he was on house arrest while he was awaiting trial of this case. However, Defendant does not assert that his conditions of release are consistent with *Fellhauer*'s first prong, nor does he adequately argue how he would be subject to a charge of criminal escape from an unauthorized department consistent with *Fellhauer*'s second prong. "We will not review unclear arguments, or guess at what a party's arguments might be." *Elane Photography, LLC*, 2013-NMSC-040, ¶ 70 (alteration, internal quotation marks, and citation omitted)).

**{26}** Here, Defendant was placed on house arrest at the Lady of Guadalupe Monastery without any electronic monitoring. Instead, if Defendant left the monastery without authorization, the administrator obligated himself to report this to the district attorney, and notably not the district court. The district court concluded that because Defendant's terms of house arrest at the monastery were not a "judicially approved community custody release program" in the form of a day detention program, electronic monitoring program, a day reporting program, or a community tracking program, Defendant was not subject to the charge of escape for leaving the monastery. Under these circumstances, we presume that the district court did not err by denying Defendant's request for additional presentence confinement credit. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (stating that there is a presumption of correctness in the rulings or decisions of the trial court, and the party claiming error bears the burden of showing such error).

**CONCLUSION**

**{27}** For the reasons stated above, we affirm Defendant's convictions as to the reckless driving counts, reverse Defendant's conviction for DWI and remand this case to the district court for a new trial upon the DWI charge.

**{28}** **IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**KATHERINE A. WRAY, Judge**